FILED
NOV - 7 2002
SAMUEL L. KAY, CLERK
U. S. District & Bankruptcy Courts
Southern District of West Virginia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**at Charleston**

**THE CINCINNATI INSURANCE COMPANY,**

**Plaintiff,**

**v.** **CIVIL ACTION NO.** 2:02-1325

**HEMINGWAY PLACE DEVELOPMENT COMPANY, LLC, DOUGLAS E. PAULEY, and PAUL HUDSON,**

**Defendants.**

**COMPLAINT FOR DECLARATORY RELIEF**

Now comes The Cincinnati Insurance Company, by counsel, pursuant to 28 U.S.C. § 2201, and for its complaint for declaratory relief, states as follows:

1. The Cincinnati Insurance Company, (hereinafter "Cincinnati"), is a corporation organized under the laws of the State of Ohio, with its principal place of business located in the State of Ohio.

2. Hemingway Place Development Company, LLC, (hereinafter "Hemingway Place"), is a limited liability company organized under the laws of the State of West Virginia, with its principal place of business located in Charleston, West Virginia.

3. Upon information and belief, Douglas E. Pauley, is a citizen of the State of West Virginia and resides in Charleston, West Virginia.

4. Upon information and belief, Paul Hudson is a citizen and resident of the State of West Virginia.

5. Upon information and belief, the amount in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue is proper in this matter, as all defendants reside and/or are found in this judicial district and a substantial part of the events and transactions relevant to this matter occurred in this district.

7. The defendants herein are also named as defendants in the following civil actions, (hereinafter referred to collectively as "the underlying civil actions"), pending in the Circuit Court of Kanawha County, West Virginia: Michael W. Davis and Linda S. Davis v. Hemingway Place Development Company, LLC, Douglas E. Pauley, and Paul Hudson, Civil Action No. 01-C-55 (copy of complaint attached hereto as Exhibit A); Robert E. Plott, Sr. and Bessie M Plott v. Hemingway Place Development Company, LLC, Douglas E. Pauley, Daniel Lucas Hart, AIA, and Paul Hudson, Civil Action No. 01-C-56 (copy of complaint attached hereto as Exhibit B); and Gregory T. Lagos v. Hemingway Place Development Company, LLC, Douglas E. Pauley, Daniel Lucas Hart, AIA, and Paul Hudson, Civil Action No. 01-C-57 (copy of complaint attached hereto as Exhibit C).

8. The plaintiffs in these civil actions seek the recovery of damages arising from allegedly defective construction by the defendants of certain townhouses located in the development known as Hemingway Place, in Charleston, West Virginia, which were purchased by the plaintiffs.

9. Hemingway Place is the named insured under a commercial package policy, No. CPP 067 99 36, (copy attached hereto as Exhibit D), and a commercial umbrella liability policy, No. CCC 445 08 24, issued by Cincinnati (copy attached hereto as Exhibit E).

10. The Commercial General Liability Coverage Form ("CGL"), contained in commercial package policy, No. CPP 067 99 36 provides, in Section I, Coverage A:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

* * *

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

* * *

11. "Bodily injury" is defined by the CGL policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

12. The CGL policy defines "property damage" to include:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

13. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

14. Coverage A under the CGL coverage is subject to certain exclusions, including the following:

This insurance does not apply to:

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement;

(2) That the insured would have in the absence of the contract or agreement.

* * *

j. Damage to Property

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5), and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Recall of Products, Work or Impaired Property

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product;"

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

15. The policy defines "products-completed operations hazard" as:

a. . . . all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

* * *

16. "Your product" is defined by the policy as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . [y]ou . . . ." "Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

* * *

17. "Your work" is defined as:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

18. The CGL policy also includes coverage, under the Builders' Risk Inland Marine Coverage Form, as follows:

1. Covered Property

a. Buildings and Structures – "We" cover direct physical loss caused by a Covered Cause of Loss to buildings and structures described on the "declarations" while in the course of

construction, erection, or fabrication. This includes materials and supplies which will become a permanent part of the buildings or structures, all while located on the premises of the buildings or structures described on the "declarations", or within 1000 feet of such premises. This also includes foundations, excavations, grading and filling.

* * *

2. Property Not Covered

* * *

d. Existing Buildings or Structures – "We" do not cover existing buildings or structures to which additions, alterations, improvements, or repairs are being made.

e. Land – "We" do not cover land including land on which Covered Property is located.

* * *

3. Covered Causes of Loss

"We" cover risks of direct physical loss unless the loss is:

a. Limited by this coverage form; or

b. Caused by a peril that is excluded.

4. Additional Coverages

* * *

b. Debris Removal – "We" pay the cost to remove the debris of Covered Property that is caused by a Covered Cause of Loss. . . .

* * *

"We" do not pay any more under this coverage than 25 percent of the amount "we" pay for the direct loss. "We" do not pay more for loss to property and debris removal combined than the "limit" for the damaged property.

19. The builders risk coverage is subject to certain exclusions, including the following:

1. "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

* * *

g. Penalties - "We" do not pay for loss caused by penalties for noncompletion or non-compliance with any contract terms or conditions.

2. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss:

a. Contamination or Deterioration - "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in the Covered Property that causes it to damage or destroy itself.

* * *

d. Loss of Use - "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

* * *

3. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by

a Covered Cause of Loss results "we" do pay for the resulting loss.

a. Defects, Errors, and Omissions - "We" do not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to:

(1) Design, specifications, construction, or workmanship;

(2) Planning, zoning, development, siting, surveying, grading, or compaction; or

(3) Maintenance, installation, renovation, remodeling, or repair.

* * *

d. Settling, Cracking, Shrinking, Bulging, or Expanding - "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, foundations, walls, ceilings, glass, or roofs.

* * *

20. The Commercial Umbrella Liability Policy provides excess coverage, as follows:

A. Insuring Agreement

We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages in excess of the "underlying insurance" or for an "occurrence" covered by this policy which is either excluded or not covered by the "underlying insurance" because of:

1. "Bodily injury" or "property damage" covered by this policy occurring during the policy period and caused by an "occurrence"; or

2. "Personal injury" or "advertising injury" covered by this policy committed during the policy period and caused by an "occurrence".

* * *

B. Exclusions

This policy does not apply to:

* * *

3. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

4. Damage to Property

"Property damage" to property owned by any insured;

5. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

6. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

* * *

14. Recall of Products, Work or Impaired Property

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

a. "Your product";

b. "Your work"; or

c. "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

* * *

21. The umbrella policy defines relevant terms as follows:

3. "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish and mental injury, including care, loss of services or death resulting from any of these at any time.

* * *

9. "Occurrence" means:

a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage".

All damages arising from continuous or repeated exposure to substantially the same general condition shall be deemed one "occurrence".

b. An offense that results in "personal injury" or "advertising injury". All damages that arise from the same act, publication or general conditions shall be deemed to arise from one "occurrence" . . . .

* * *

11. "Products-completed operations hazard" means:

a. All "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

* * *

12. "Property damage" means:

a. Physical injury to or destruction of tangible property including all resulting loss of use. All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

* * *

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

* * *

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

22. Cincinnati's first notice of the claims presented in these civil actions was received after the filing of the underlying complaints.

23. The allegations contained in the underlying complaints are not covered by the terms of the commercial package policy or the umbrella policy described herein.

24. To date, Cincinnati has been provided no information to demonstrate that any of the allegations made or damages sought by the plaintiffs in the underlying civil actions are covered by the Cincinnati policies.

25. An actual controversy exists regarding Cincinnati's obligation, if any, to provide coverage in connection with the underlying civil actions.

26. Cincinnati previously filed a motion to intervene in the underlying civil actions for the purpose of resolving this controversy; however, upon objection by the defendants herein to its intervention in those actions, the motion to intervene was denied by the Circuit Court of Kanawha County.

WHEREFORE, the plaintiff, The Cincinnati Insurance Company, respectfully requests that the Court accept jurisdiction in this matter, enter an Order declaring that Cincinnati is not obligated to provide coverage for the claims asserted against the defendants in the underlying civil actions, and grant Cincinnati such further relief as it deems proper.

**THE CINCINNATI INSURANCE COMPANY**
By Counsel

Renatha S. Garner, Esquire (#4644)
Barbara J. Keefer, Esquire (#1979)
MacCorkle, Lavender, Casey & Sweeney, PLLC
300 Summers Street, Suite 800
Post Office Box 3283
Charleston, West Virginia 25332
(304) 344-5600
(304) 344-8141 (fax)

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**MICHAEL W. DAVIS and**
**LINDA S. DAVIS,**

**Plaintiffs,**

**v.** **Civil Action No.** 01-C

**HEMINGWAY PLACE DEVELOPMENT COMPANY, LLC, DOUGLAS E. PAULEY, individually, and PAUL HUDSON, individually,**

**Defendants.**

# COMPLAINT

COME NOW the plaintiffs, Michael W. Davis and Linda S. Davis, and for their complaint state as follows:

1. Plaintiffs are, and at all times relevant hereto were, residents of Kanawha County, West Virginia.

2. Defendant, Hemingway Place Development Company, LLC, ("Hemingway"), upon belief and information, is a West Virginia Limited Liability Company, and has its principal place of business in Kanawha County, West Virginia.

3. Defendant, Douglas E. Pauley, ("Pauley"), is a resident of and does business in Kanawha County, West Virginia.

4. Defendant Paul Hudson, ("Hudson"), is a resident of and does business in Kanawha County, West Virginia.

RECEIVED
MAY 21 2001

5. Hemingway, at all times relevant hereto, was the developer of a townhouse community known as "Hemingway Place" in the City of Charleston, Kanawha County, West Virginia.

6. Pauley is, and at all times relevant hereto, was an employee of Hemingway and acted in either said capacity as the representative and agent of Hemingway or in his individual capacity when acting outside the scope of his employment with Hemingway.

7. Hudson, at all times relevant hereto, was Hemingway's Marketing Director and acted as either a representative and agent of Hemingway or in his individual capacity when acting outside the scope of his employment by Hemingway, if any.

8. As an inducement to purchase a townhome in Hemingway Place, Hemingway, Pauley and Hudson expressly represented to plaintiffs that the townhome purchased by plaintiffs would be of "high quality," utilizing "cutting-edge design and technology" and that plaintiffs' townhome would be constructed using "the highest quality construction methods and materials."

9. On or about April 20, 1998, Paul Hudson represented to plaintiffs that construction of their townhome would be completed no more than eighteen (18) months from signing of the Real Estate Sales and Construction Agreement.

10. In reliance upon the representations of Hemingway, Pauley and Hudson, plaintiffs entered into a Real Estate Sales and Construction Agreement on or about the 20th day of April, 1998 wherein they agreed to purchase from Hemingway a townhome and lot number 310 in Hemingway Place for a price of One Hundred Seventy-Seven Thousand Dollars ($177,000.00).

11. In consideration for the aforesaid Real Estate Sales and Construction Agreement, Hemingway agreed to construct a townhouse residence for plaintiffs in accordance with plans and specifications prepared by Daniel Lucas Hart, AIA. In further material consideration for the aforesaid Real Estate Sales and Construction Agreement, Hemingway agreed to complete construction of the plaintiffs' townhome within eighteen (18) months of signing said Agreement.

12. As a further consideration and inducement to the plaintiffs, Hemingway warranted the sale of plaintiffs' new townhome against defects in material and workmanship for a period of one (1) year from the time of possession or closing.

13. Hemingway Place failed to complete plaintiffs' townhome as promised within eighteen (18) months of signing the Real Estate Sales and Construction Agreement and, as a result, plaintiffs sustained monetary damage resulting from mortgage interest rate changes and loss of mortgage interest tax deductions between December 1, 1999 and May 26, 2000.

14. On or about May 26, 2000, Hemingway, through Pauley, executed a "Builder's Warranty and Certificate" in favor of plaintiffs. Said warranty warranted that plaintiffs' townhouse was constructed in substantial conformity with the drawings and materials specified for the project.

15. The aforesaid Builder's Warranty further warranted plaintiffs' townhome against "any defective condition" in the premises for one (1) year from the date of initial occupancy by plaintiffs.

16. The aforesaid Builder's Warranty further required that Hemingway "take any necessary actions to correct defective conditions within thirty (30) days of receipt of

written notice [from plaintiffs]. If such action is not taken within thirty (30) days, the owners [plaintiffs] may, at their option, contract with another party for the correction of the defects. Warrantor agrees to pay any expenses incurred by the owners [plaintiffs] to correct defects covered by this warranty."

17. Pauley represented and certified that he was authorized on behalf of Hemingway to execute the aforesaid Builder's Warranty and to bind Hemingway to the terms and conditions of the warranty.

18. Within the one-year warranty period, plaintiffs have notified Hemingway, Pauley, Hudson and their representatives, in writing, of numerous defects in plaintiffs' townhome and have requested that Hemingway address those issues which include, but are not limited to, the following:

a) Water in crawl space;

b) Insulation in crawl space;

c) Odor in crawl space and laundry room;

d) Moisture barrier in crawl space;

e) Shimming of girders at pier bearing;

f) Lack of main water shut-off valve;

g) Ventilation;

h) Sagging duct work;

i) Improper grading of landscaping, sloping toward crawl space;

j) Overheating electrical switches;

k) Venting of exhaust fans;

l) Numerous unsightly paint and drywall defects throughout the home;

m) Asymmetrical master bedroom ceiling;

n) Uncentered lighting fixtures;

o) Incorrect door hardware;

p) Rough trim and finish carpentry;

q) Gaps in wood flooring;

r) Sloppy paint work;

s) Torn window screens;

t) Leaky window sills;

u) Unsightly plumbing trim;

v) Lack of closet lighting;

w) Driveway cracked;

x) Poor or missing exterior caulking; and

y) Other defects as identified in American Home Inspector, Inc.'s report dated September 1, 2000 and correspondence to Philip Hereford, Esquire dated November 21, 2000.

19. Defendants in conscious disregard of their representations, contracts and warranties have refused to correct or pay for defects in plaintiffs' home.

20. Plaintiffs have experienced substantial aggravation and inconvenience as a result of the breach of warranty, breach of contract and because of the negligent, shoddy and defective work by Hemingway, its agents and employees. Plaintiffs have personally been required to undertake efforts, including, but not limited to, the following:

a) Clean up construction debris and trash, including concrete and drywall dust throughout the house;

b) Potentially expend large sums of their own money to correct defects in their home which are the responsibility of defendants.

## COUNT I – BREACH OF CONTRACT

21. Plaintiffs hereby incorporate by reference their allegations as set forth in paragraphs 1-20, above.

22. Defendants Hemingway, Pauley and Hudson have intentionally breached representations, contracts and warranties made to plaintiffs and upon which plaintiffs have relied to their detriment.

23. As a result of the breach of expressed and implied representations, warranties and contracts by defendants, plaintiffs demand judgment against Hemingway, Pauley and Hudson for damages, including, but not limited to, the following:

a) Payment for painting and drywall repair work in an amount of not less than $4,660.00;

b) The cost of carpentry and other numerous repairs;

c) The cost of completion and repair to the crawl space of their home;

d) The cost of obtaining technical consultants to design and inspect repairs to their home;

e) Compensation for aggravation and inconvenience;

f) Compensation for the delay in completion of the plaintiffs' home and attendant damages sustained as a result of increased mortgage interest rates and loss of tax deductions;

g) The difference in value as between the home plaintiffs' bargained for and the home that was delivered to them in defective condition; and

h) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%).

**COUNT II – NEGLIGENCE**

24. Plaintiffs hereby incorporate by reference their allegations as set forth in paragraphs 1-23, above.

25. Defendants Hemingway, Pauley and Hudson had a duty to construct plaintiffs' home and repair defects in the home purchased by the plaintiffs in a good and workmanlike manner.

26. Defendants breached the aforesaid duty to plaintiffs.

27. As a result of their negligence, said defendants are jointly and severally liable to plaintiffs for damages, including, but not limited to, the following:

a) Payment for painting and drywall repair work in an amount of not less than $4,660.00;

b) The cost of carpentry and other numerous repairs;

c) The cost of completion and repair to the crawl space of their home;

d) The cost of obtaining technical consultants to design and inspect repairs to their home;

e) Compensation for aggravation and inconvenience;

f) Compensation for the delay in completion of the plaintiffs' home and attendant damages sustained as a result of increased mortgage interest rates and loss of tax deductions;

g) The difference in value as between the home plaintiffs' bargained for and the home that was delivered to them in defective condition; and

h) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%).

## COUNT III – FRAUDULENT MISREPRESENTATION OF HEMINGWAY, PAULEY AND HUDSON

28. Plaintiffs hereby incorporate by reference their allegations as set forth in paragraphs 1-27, above.

29. Defendants Hemingway, Pauley and Hudson made fraudulent misrepresentations unto plaintiffs to induce them to enter into the aforesaid Real Estate Sales and Purchase Agreement, more specifically as follows:

a) Hemingway and Pauley represented that the plaintiffs' home would be constructed to a quality of high standard. Said representation was intentionally false and misleading.

b) Hemingway represented that it would complete the construction of plaintiffs' townhome within eighteen (18) months after signing of the Real Estate Sales and Construction Agreement. Said representation was intentionally false and misleading and an inducement to obtain money from plaintiffs.

c) Hemingway, through Pauley and Hudson, warranted that plaintiffs' home would be free of defective conditions. Said representations were false and made as an inducement for plaintiffs to pay money unto Hemingway.

d) Hemingway agreed to pay any expenses incurred by plaintiffs to correct defects in their townhome. Said agreement was fraudulent in that it was made upon false representations by defendant Hemingway through Pauley and Hudson and as an inducement to have plaintiffs pay money unto Hemingway.

e) Plaintiffs relied to their detriment upon the representations and misrepresentations of defendants.

30. As a result of the fraudulent misrepresentation by defendants Hemingway, Pauley and Hudson, defendants are liable to plaintiffs for damages, including, but not limited to, the following:

a) Payment for painting and drywall repair work in an amount of not less than $4,660.00;

b) The cost of carpentry and other numerous repairs;

c) The cost of completion and repair to the crawl space of their home;

d) The cost of obtaining technical consultants to design and inspect repairs to their home;

e) Compensation for aggravation and inconvenience;

f) Compensation for the delay in completion of the plaintiffs' home and attendant damages sustained as a result of increased mortgage interest rates and loss of tax deductions;

g) The difference in value as between the home plaintiffs' bargained for and the home that was delivered to them in defective condition;

h) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%); and

i) Punitive damages in an amount sufficient to deter such fraudulent misrepresentation on the part of said defendants in the future.

## COUNT IV – NEGLIGENCE AS AGAINST HEMINGWAY, PAULEY AND HUDSON

31. Plaintiffs hereby incorporate by reference their allegations as set forth in paragraphs 1-30, above.

32. Defendants Hemingway, Pauley and Hudson had a duty to plaintiffs to assure that plaintiffs' home was constructed in a good and workmanlike manner, without defects, and in compliance with building codes and design drawings.

33. Defendants Hemingway, Pauley and Hudson had a duty to plaintiffs to repair any defects in material and workmanship in plaintiffs' home in a good and workmanlike manner and in compliance with industry standards and building codes.

34. Defendants Hemingway, Pauley and Hudson, jointly and severally, breached the aforesaid duties to plaintiffs and, as a result, plaintiffs have been damaged and defendants are liable to plaintiffs for damages, including, but not limited to, the following:

a) Payment for painting and drywall repair work in an amount of not less than $4,660.00;

b) The cost of carpentry finish and other numerous repairs;

c) The cost of completion and repair to the crawl space of their home;

d) The cost of obtaining technical consultants to design and inspect repairs to their home;

e) Compensation for aggravation and inconvenience;

f) Compensation for the delay in completion of the plaintiffs' home and attendant damages sustained as a result of increased mortgage interest rates and loss of tax deductions;

g) The difference in value as between the home plaintiffs' bargained for and the home that was delivered to them in defective condition; and

h) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%).

WHEREFORE, plaintiffs respectfully demand judgment as against defendants, jointly and severally, for all damages as aforesaid, in an amount sufficient to make them whole, together with punitive damages, pre-judgment and post-judgment interest, their attorney's fees, costs and expenses necessarily incurred, and such further additional damages as may be awarded by the Court and jury.

PLAINTIFFS DEMAND A TRIAL BY JURY.

MICHAEL W. DAVIS and LINDA S. DAVIS

By Counsel

David V. Moore, Esquire
MOORE & WEBER, PLLC
179 Summers Street, Suite 603
Post Office Box 945
Charleston, West Virginia 25323
(304) 346-4083
West Virginia State Bar No. 2607

## VERIFICATION

I, Michael W. Davis, after being first duly sworn, say that the facts and allegations contained in the foregoing "**Complaint**" are true, except insofar as they are stated to be upon information and belief, and that insofar as they are stated to be upon information and belief, I believe them to be true.

MICHAEL W. DAVIS

Taken, subscribed and sworn to before me this 9th day of January, 2001.

My commission expires: March 31, 2009.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHERRY L. COTTRELL
c/o MOORE & WEBER, PLLC
179 SUMMERS STREET, SUITE 603
CHARLESTON, WEST VIRGINIA 25323
My Commission Expires March 31, 2009

Notary Public

**VERIFICATION**

I, Linda S. Davis, after being first duly sworn, say that the facts and allegations contained in the foregoing "**Complaint**" are true, except insofar as they are stated to be upon information and belief, and that insofar as they are stated to be upon information and belief, I believe them to be true.

Linda S. Davis
LINDA S. DAVIS

Taken, subscribed and sworn to before me this 9th day of January, 2001.

My commission expires: March 31, 2009.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHERRY L. COTTRELL
c/o MOORE & WEBER, PLLC
179 SUMMERS STREET, SUITE 603
CHARLESTON, WEST VIRGINIA 25323
My Commission Expires March 31, 2009

Sherry L. Cottrell
Notary Public

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

ROBERT E. PLOTT, SR. and
BESSIE M. PLOTT,

Plaintiffs,

v. Civil Action No. 01-C-56

HEMINGWAY PLACE DEVELOPMENT
COMPANY, LLC, DOUGLAS E. PAULEY,
individually, DANIEL LUCAS HART, AIA, and
PAUL HUDSON, individually.

Defendants.

01 JAN 19 PM 1:22

Copy (jc)

## COMPLAINT

COME NOW the plaintiffs, Robert E. Plott, Sr. and Bessie M. Plott, and for their complaint state as follows:

1. Plaintiffs are, and at all times relevant hereto were, residents of Kanawha County, West Virginia.

2. Defendant Hemingway Place Development Company, LLC, ("Hemingway"), upon belief and information, is a West Virginia Limited Liability Company, and has its principal place of business in Kanawha County, West Virginia.

3. Defendant, Douglas E. Pauley, ("Pauley"), is a resident of and does business in Kanawha County, West Virginia.

4. Defendant Daniel Lucas Hart, ("Hart"), is an architect who is a resident of Greenbrier County, West Virginia and at all times relevant hereto did business in Kanawha County, West Virginia.

RECEIVED MAY 21 2001

5. Defendant Paul Hudson, ("Hudson"), is a resident of and does business in Kanawha County, West Virginia.

6. Hemingway, at all times relevant hereto, was the developer of a townhouse community known as "Hemingway Place" in the City of Charleston, Kanawha County, West Virginia.

7. Pauley is, and at all times relevant hereto was, an employee of Hemingway and acted in either said capacity as the representative and agent of Hemingway or in his individual capacity if and when acting outside the scope of his employment with Hemingway.

8. Defendant Daniel L. Hart was the architect of record for Hemingway Place generally and for the townhome unit purchased from Hemingway by plaintiffs in particular.

9. As an inducement to purchase a townhome in Hemingway Place, Hemingway, Pauley and Hudson expressly represented to plaintiffs that the townhome to be purchased by plaintiffs would be of "high quality," utilizing "cutting-edge design and technology" and that plaintiffs' townhome would be constructed using "the highest quality construction methods and materials."

10. On or about April 6, 1999, Paul Hudson represented to plaintiffs that construction of a townhome to be purchased by plaintiffs would be completed on or before October 1, 1999.

11. In reliance upon the representations of Hemingway, Pauley and Hudson, plaintiffs entered into a Real Estate Sales and Construction Agreement on or about the 6th day of April, 1999 wherein they agreed to purchase from Hemingway a townhome and

lot number 307 in Hemingway Place for a price of One Hundred Ninety-Four Thousand Dollars ($194,000.00).

12. In consideration for the aforesaid Real Estate Sales and Construction Agreement, Hemingway agreed to construct a townhouse residence for plaintiffs in accordance with plans and specifications prepared by Daniel Lucas Hart, AIA. In further material consideration for the aforesaid Real Estate Sales and Construction Agreement, Hemingway agreed to complete construction of the plaintiffs' townhome within six (6) months after commencement of construction.

13. As a further consideration and inducement to the plaintiffs, Hemingway warranted the sale of plaintiffs' new townhome against defects in material and workmanship for a period of one (1) year from the time of possession or closing.

14. In July, 1999, plaintiffs requested that Hudson assure that ivany block would be used in the foundation of plaintiffs' home in that the foundation/basement walls were unusually high and served as a retaining wall for a great amount of fill dirt. In response, Hudson, either individually or in his capacity as a representative of Hemingway, stated that ivany block would not be necessary.

15. Hemingway failed to complete plaintiffs' townhome as promised by October 1, 1999 and, as a result, plaintiffs' move was severely disrupted and they were subjected to much anxiety, aggravation, expense and inconvenience in finally moving their belongings to the home on December 28, 1999.

16. On or about December 28, 1999, Hemingway, through Pauley, executed a "Builder's Warranty and Certificate" in favor of plaintiffs. Said warranty warranted that

plaintiffs' townhouse was constructed in substantial conformity with the drawings and materials specified for the project.

17. The aforesaid Builder's Warranty further warranted plaintiffs' townhome against "any defective condition" in the premises for one (1) year from the date of initial occupancy by plaintiffs.

18. The aforesaid Builder's Warranty further required and represented that Hemingway "take any necessary actions to correct defective conditions within thirty (30) days of receipt of written notice [from plaintiffs]. If such action is not taken within thirty (30) days, the owners [plaintiffs] may, at their option, contract with another party for the correction of the defects. Warrantor agrees to pay any expenses incurred by the owners [plaintiffs] to correct defects covered by this warranty."

19. Pauley represented and certified that he was authorized on behalf of Hemingway to execute the aforesaid Builder's Warranty and to bind Hemingway to the terms and conditions of the warranty.

20. On or about December 29, 1999, Hemingway and plaintiffs entered into an Escrow Agreement.

21. In the aforesaid Escrow Agreement, Hemingway agreed to complete "in a manner that is satisfactory to purchasers [plaintiffs] all items referenced in said Escrow Agreement." In the event said items were not completed by the completion date, the purchasers [plaintiffs] were authorized in their sole and absolute discretion to "enter into separate agreements with contractors for the completion of the items in a manner that is satisfactory to them."

22. In the aforesaid Escrow Agreement, Hemingway further promised that, "After purchasers [plaintiffs] return to their townhouse in April, 2000, any other work that has not been completed or work that has to be redone will be completed to the purchasers' satisfaction at the seller's cost. This is in compliance with the one-year guarantee given to the purchasers by the seller."

23. On or about May 23, 2000, Hudson represented to plaintiffs that water leakage in plaintiffs' basement and all punch list items would be completed. In reliance on said representations of Hudson, plaintiffs released their escrow in the amount of Four Thousand Five Hundred Dollars ($4,500.00) which was the subject of the aforesaid Escrow Agreement.

24. On numerous occasions, and within the one-year warranty, plaintiffs have notified Hemingway, Pauley, Hudson and their representatives, in writing, of numerous defects in plaintiffs' townhome and have requested that Hemingway address those issues which include, but are not limited to, the following:

a) Misaligned fireplace with hearth;

b) Batt insulation in the attic;

c) Stabilize stairway railing and landing railing;

d) Correct weather stripping on front door, utility room door to garage, french door and basement metal door;

e) Repair outside front door latch;

f) Repair locks on upstairs bath and bedroom doors;

g) Repair trim on refrigerator;

h) Repair master bath window;

i) Install safe basement stair railings;

j) Install functional door latch on outside basement door;

k) Repair drywall defects and repaint;

l) Eliminate ingress of water into the basement;

m) Seal basement wall;

n) Ventilation in attic over master bedroom is inadequate;

o) Insulation is missing above ceiling in master bedroom;

p) Insulation is otherwise missing in attic;

q) Garage door trim caulk is separating;

r) Large gaps exist between siding panels on screened porch and on the wall of the home;

s) Insulation restricts air circulation in area over garage;

t) Rain gutters leak;

u) Basement stairway guardrails and hand rails are loose;

v) Stairway to basement is not fitted with proper guardrails and does not comply with code requirements;

w) Water continues to leak through the front basement wall; and

x) The basement wall is cracked, is bulging inward and is structurally defective.

25. Defendants in conscious disregard of their representations, contracts and warranties have refused to correct or pay for defects in plaintiffs' home.

26. Plaintiffs have experienced substantial aggravation and inconvenience as a result of the breach of warranty, breach of contract and because of the negligent, shoddy

and defective work by Hemingway, its agents and employees. Plaintiffs have personally been required to undertake efforts, including, but not limited to, the following:

a) Spend hours patching and sanding nail holes and wood trim;

b) Spend hours sanding patched areas in plaster;

c) Locate the source of water leaks in the basement;

d) Clean up construction debris and trash, including concrete dust throughout the house;

e) Remove paint from hardwood floors;

f) Spend hours meeting with contractors and consultants to determine appropriate means to correct defects in their home; and

g) Expend large sums of their own money to correct defects in their home which are the responsibility of defendants.

## COUNT I – BREACH OF CONTRACT

27. Plaintiffs hereby incorporate by reference their allegations as set forth in paragraphs 1-26, above.

28. Defendants Hemingway, Pauley and Hudson have intentionally breached representations, contracts and warranties made to plaintiffs and upon which plaintiffs have relied to their detriment.

29. As a result of the breach of expressed and implied representations, warranties and contracts by defendants, plaintiffs demand judgment against Hemingway, Pauley and Hudson for damages, jointly and severally, including, but not limited to, the following:

a) Reimbursement for painting and drywall repair work performed by Slappe & Sons, $3,455.00;

b) The cost of carpentry repair and other miscellaneous repairs in the amount of $2,000.00;

c) The cost of repair to the basement wall of their home, $24,486.27;

d) The cost of obtaining technical engineering and structural consultants to design and inspect repairs to their home, $10,000.00;

e) Compensation for aggravation and inconvenience, including the delay in completion of the plaintiffs' home, compensation for time and materials expended by plaintiffs in taking corrective action and attendant damages in an amount to be determined by a jury;

f) The difference in value as between the home plaintiffs' bargained for and the home that was delivered to them in defective condition;

g) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%); and

h) In the alternative, that defendants, one or all of them, repurchase plaintiffs' home for an amount sufficient to make plaintiffs whole.

**<u>COUNT II – NEGLIGENCE</u>**

30. Plaintiffs hereby incorporate by reference their allegations as set forth in paragraphs 1-29, above.

31. Defendants Hemingway, Pauley and Hudson had a duty to construct and repair defects in the home purchased by the plaintiffs in a good and workmanlike manner.

32. Defendants breached the aforesaid duty to plaintiffs.

33. As a result of their negligence, said defendants are jointly and severally liable to plaintiffs for damages, including, but not limited to, the following:

a) Reimbursement for painting and drywall repair work performed by Slappe & Sons, $3,455.00;

b) The cost of carpentry repair and other miscellaneous repairs in the amount of $2,000.00;

c) The cost of repair to the basement wall of their home, $24,486.27;

d) The cost of obtaining technical engineering and structural consultants to design and inspect repairs to their home, $10,000.00;

e) Compensation for aggravation and inconvenience, including the delay in completion of the plaintiffs' home, compensation for time and materials expended by plaintiffs in taking corrective action and attendant damages in an amount to be determined by a jury;

f) The difference in value as between the home plaintiffs' bargained for and the home that was delivered to them in defective condition;

g) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%); and

h) In the alternative, that defendants, one or all of them, repurchase plaintiffs' home for an amount sufficient to make plaintiffs whole.

**COUNT III – FRAUDULENT MISREPRESENTATION OF HEMINGWAY, PAULEY AND HUDSON**

34. Plaintiffs hereby incorporate by reference their allegations as set forth in paragraphs 1-33, above.

35. Defendants Hemingway, Pauley and Hudson made fraudulent misrepresentations unto plaintiffs to induce them to enter into the aforesaid Real Estate Sales and Construction Agreement, to release escrow funds and to pay money unto Hemingway, more specifically as follows:

a) Hemingway and Pauley represented that the plaintiffs' home would be constructed to a quality of high standard. Said representation was intentionally false.

b) Hemingway and/or Pauley represented to plaintiffs on numerous occasions that they would be reimbursed for the cost of painting and drywall repair. In reliance on said representation, plaintiffs had said work performed. The representations of Hemingway and/or Pauley were intentionally false in that said defendants have refused to reimburse plaintiffs for the expense of said repair work.

c) Hemingway represented that it would complete the construction of plaintiffs' townhome within six (6) months after commencement of construction. Said representation was intentionally false as an inducement to obtain money from plaintiffs.

d) Hemingway, through Pauley and Hudson, warranted that plaintiffs' home would be free of defective conditions. Said representations were false and made as an inducement for plaintiffs to pay money unto Hemingway.

e) Hemingway agreed to pay any expenses incurred by plaintiffs to correct defects in their townhome. Said agreement was fraudulent in that it was made upon false representations by defendant Hemingway through Pauley and Hudson and as an inducement to have plaintiffs pay money unto Hemingway.

f) Hudson represented unto plaintiffs that the use of ivany block to increase the strength of their basement wall was unnecessary. Said representation was false or, at a minimum, negligent misrepresentation and outside the scope of Hudson's expertise.

g) Hudson intentionally misrepresented to plaintiffs that if they released their escrow in the amount of Four Thousand Five Hundred Dollars ($4,500.00), that he and/or Hemingway would correct water leakage in plaintiffs' basement and all defects in the home. Said representation was intentionally false and made as an inducement to plaintiffs to part with their money.

h) Plaintiffs relied, to their detriment, upon the representations and misrepresentations of Hemingway, Pauley and Hudson.

36. As a result of the fraudulent misrepresentation by defendants Hemingway, Pauley and Hudson, defendants are liable to plaintiffs for damages, including, but not limited to, the following:

a) Reimbursement for painting and drywall repair work performed by Slappe & Sons, $3,455.00;

b) The cost of carpentry repair and other miscellaneous repairs in the amount of $2,000.00;

c) The cost of repair to the basement wall of their home, $24,486.27;

d) The cost of obtaining technical engineering and structural consultants to design and inspect repairs to their home, $10,000.00;

e) Compensation for aggravation and inconvenience, including the delay in completion of the plaintiffs' home, compensation for time and materials expended by plaintiffs in taking corrective action and attendant damages in an amount to be determined by a jury;

f) The difference in value as between the home plaintiffs' bargained for and the home that was delivered to them in defective condition;

g) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%);

h) Punitive damages in an amount sufficient to deter such fraudulent misrepresentation on the part of said defendants in the future; and

i) In the alternative, that defendants, one or all of them, repurchase plaintiffs' home for an amount sufficient to make plaintiffs whole.

COUNT IV – NEGLIGENCE ON THE PART OF DANIEL LUCAS HART

37. Plaintiffs hereby incorporate by reference their allegations as set forth in paragraphs 1-36, above.

38. Defendant Hart had a professional and a common law duty to design and prepare architectural, structural drawings and specifications for the construction of plaintiffs' home in a non-negligent fashion.

39. Defendant Hart had a duty to submit all drawings and design documents to appropriate governmental and code authorities for approval and inspection.

40. Defendant Hart had a duty to assure that the construction of plaintiffs' home was done in compliance with building codes, the regulations of the City of Charleston, appropriate design and construction documents and in a good and workmanlike manner.

41. Defendant Hart had a duty to design and specify adequate foundations, basement walls and footer drains for the plaintiffs' home, and to prepare structural drawings of footer, foundation and basement wall cross sections and elevations.

42. Defendant Hart breached or altogether failed to perform the duties as stated in paragraphs 38-41, above and other professional duties.

43. As a result of Hart's professional errors and omissions, plaintiffs' home is defective, unsafe and the basement wall is cracking, structurally defective and allows ingress of water and moisture.

44. As a result of the negligence of Hart, defendant Hart is liable to plaintiffs for damages, including, but not limited to, the following:

a) Reimbursement for painting and drywall repair work performed by Slappe & Sons, $3,455.00;

b) The cost of carpentry repair and other miscellaneous repairs in the amount of $2,000.00;

c) The cost of repair to the basement wall of their home, $24,486.27;

d) The cost of obtaining technical engineering and structural consultants to design and inspect repairs to their home, $10,000.00;

e) Compensation for aggravation and inconvenience, including the delay in completion of the plaintiffs' home, compensation for time and materials expended by plaintiffs in taking corrective action and attendant damages in an amount to be determined by a jury;

f) The difference in value as between the home plaintiffs' purchased and the home that was delivered to them in defective condition;

g) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%); and

h) In the alternative, that defendant purchase plaintiffs' home for an amount sufficient to make them whole.

## COUNT V – NEGLIGENCE AS AGAINST HEMINGWAY, PAULEY AND HUDSON

45. Plaintiffs hereby incorporate by reference their allegations as set forth in paragraphs 1-44, above.

46. Defendants Hemingway, Pauley and Hudson had a duty to plaintiffs to assure that plaintiffs' home was constructed in a good and workmanlike manner, without defects, and in compliance with building codes and design drawings.

47. Defendants Hemingway, Pauley and Hudson had a duty to plaintiffs to repair any defects in material and workmanship in plaintiffs' home in a good and workmanlike manner and in compliance with industry standards.

48. Defendants Hemingway, Pauley and Hudson, jointly and severally, breached the aforesaid duties to plaintiffs and, as a result, plaintiffs have been damaged and defendants are liable to plaintiffs for damages, including, but not limited to, the following:

a) Reimbursement for painting and drywall repair work performed by Slappe & Sons, $3,455.00;

b) The cost of carpentry repair and other miscellaneous repairs in the amount of $2,000.00;

c) The cost of repair to the basement wall of their home, $24,486.27;

d) The cost of obtaining technical engineering and structural consultants to design and inspect repairs to their home, $10,000.00;

e) Compensation for aggravation and inconvenience, including the delay in completion of the plaintiffs' home, compensation for time and materials expended by plaintiffs in taking corrective action and attendant damages in an amount to be determined by a jury;

f) The difference in value as between the home plaintiffs' bargained for and the home that was delivered to them in defective condition;

g) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%); and

h) In the alternative, that defendants, one or all of them, repurchase plaintiffs' home for a present amount of $240,370.00.

WHEREFORE, plaintiffs respectfully demand judgment as against defendants, jointly and severally, for all damages as aforesaid, including punitive damages, together

with pre-judgment and post-judgment interest, their attorney's fees, costs and expenses necessarily incurred, and such further additional damages as may be awarded by the Court and jury.

PLAINTIFFS DEMAND A TRIAL BY JURY.

ROBERT E. PLOTT, SR. and BESSIE M. PLOTT

By Counsel

David V. Moore, Esquire
MOORE & WEBER, PLLC
179 Summers Street, Suite 603
Post Office Box 945
Charleston, West Virginia 25323
(304) 346-4083
West Virginia State Bar No. 2607

# VERIFICATION

I, Robert E. Plott, after being first duly sworn, say that the facts and allegations contained in the foregoing **"Complaint"** are true, except insofar as they are stated to be upon information and belief, and that insofar as they are stated to be upon information and belief, I believe them to be true.

ROBERT E. PLOTT

Taken, subscribed and sworn to before me this 15th day of December, 2000.

My commission expires: March 31, 2009.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHERRY L. COTTRELL
c/o MOORE & WEBER, PLLC
178 SUMMERS STREET, SUITE 603
CHARLESTON, WEST VIRGINIA 25323
My Commission Expires March 31, 2009

Notary Public

**VERIFICATION**

I, Bessie M. Plott, after being first duly sworn, say that the facts and allegations contained in the foregoing "**Complaint**" are true, except insofar as they are stated to be upon information and belief, and that insofar as they are stated to be upon information and belief, I believe them to be true.

BESSIE M. PLOTT

Taken, subscribed and sworn to before me this 15th day of December, 2000.

My commission expires: March 31, 2009.

Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHERRY L. COTTRELL
c/o MOORE & WEBER, PLLC
179 SUMMERS STREET, SUITE 603
CHARLESTON, WEST VIRGINIA 25323
My Commission Expires March 31, 2009

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**GREGORY T. LAGOS,**

**Plaintiff,**

**v.** **Civil Action No.** 01-C-57

**HEMINGWAY PLACE DEVELOPMENT COMPANY, LLC, DOUGLAS E. PAULEY, individually, DANIEL LUCAS HART, AIA, and PAUL HUDSON, individually,**

**Defendants.**

01 JAN 16 PM 1:23

JB Copy

## COMPLAINT

COMES NOW the plaintiff, Gregory T. Lagos, and for his complaint states as follows:

1. Plaintiff is, and at all times relevant hereto was, a resident of Kanawha County, West Virginia.

2. Defendant Hemingway Place Development Company, LLC, ("Hemingway"), upon belief and information, is a West Virginia Limited Liability Company, and has its principal place of business in Kanawha County, West Virginia.

3. Defendant, Douglas E. Pauley, ("Pauley"), is a resident of and does business in Kanawha County, West Virginia.

4. Defendant Daniel Lucas Hart, ("Hart"), is an architect who is a resident of Greenbrier County, West Virginia and at all times relevant hereto did business in Kanawha County, West Virginia.

RECEIVED
MAY 21 2001

5. Defendant Paul Hudson, ("Hudson"), is a resident of and does business in Kanawha County, West Virginia.

6. Hemingway, at all times relevant hereto, was the developer of a townhouse community known as "Hemingway Place" in the City of Charleston, Kanawha County, West Virginia.

7. Pauley is, and at all times relevant hereto was, an employee of Hemingway and acted in either said capacity as the representative and agent of Hemingway or in his individual capacity when acting outside the scope of his employment with Hemingway.

8. Defendant Daniel L. Hart was the architect of record for Hemingway Place generally and for the townhome unit purchased from Hemingway by plaintiff in particular.

9. As an inducement to purchase a townhome in Hemingway Place, Hemingway, Pauley and Hudson expressly represented to plaintiff that the townhome purchased by plaintiff would be of "high quality," utilizing "cutting-edge design and technology" and that plaintiff's townhome would be constructed using "the highest quality construction methods and materials."

10. On or about April 17, 1998, Paul Hudson represented to plaintiff that construction of his townhome would be completed on or before six (6) months after commencement of construction.

11. In reliance upon the representations of Hemingway, Pauley and Hudson, plaintiff entered into a Real Estate Sales and Construction Agreement on or about the 17th day of April, 1998 wherein he agreed to purchase from Hemingway a townhome and lot

number 309 in Hemingway Place for a price of One Hundred Seventy-Seven Thousand Dollars ($177,000.00).

12. In consideration for the aforesaid Real Estate Sales and Construction Agreement, Hemingway agreed to construct a townhouse residence for plaintiff in accordance with plans and specifications prepared by Daniel Lucas Hart, AIA. In further material consideration for the aforesaid Real Estate Sales and Construction Agreement, Hemingway agreed to complete construction of the plaintiff's townhome within six (6) months after commencement of construction.

13. As a further consideration and inducement to the plaintiff, Hemingway warranted the sale of plaintiff's new townhome against defects in material and workmanship for a period of one (1) year from the time of possession or closing.

14. Hemingway failed to complete plaintiff's townhome in the time frame as promised and, as a result, plaintiff incurred substantial monetary damage due to rising mortgage interest rates, increased rental expenses, moving and storage expenses and loss of mortgage interest tax deductions.

15. On May 23, 2000, Hemingway executed a "Builder's Warranty and Certificate" in favor of plaintiff. Said warranty warranted that plaintiff's townhouse was constructed in substantial conformity with the drawings and materials specified for the project.

16. The aforesaid Builder's Warranty further warranted plaintiff's townhome against "any defective condition" in the premises for one (1) year from the date of initial occupancy by plaintiff.

17. The aforesaid Builder's Warranty further required that Hemingway "take any necessary actions to correct defective conditions within thirty (30) days of receipt of written notice [from plaintiff]. If such action is not taken within thirty (30) days, the owners [plaintiff] may, at their option, contract with another party for the correction of the defects. Warrantor agrees to pay any expenses incurred by the owners [plaintiff] to correct defects covered by this warranty."

18. Pauley represented and certified that he was authorized on behalf of Hemingway to execute the aforesaid Builder's Warranty and to bind Hemingway to the terms and conditions of the warranty.

19. On numerous occasions, and within the one-year warranty, plaintiff has notified Hemingway, Pauley, Hudson and their representatives, in writing, of numerous defects in plaintiff's townhome and has requested that Hemingway address those issues.

20. Defendants in conscious disregard of their representations, contracts and warranties have refused to correct or pay for defects in plaintiff's home.

21. Plaintiff has experienced substantial aggravation and inconvenience as a result of the breach of warranty, breach of contract and because of the negligent, shoddy and defective work by Hemingway, its agents and employees. Plaintiff has personally been required to undertake efforts, including, but not limited to, the following:

a) Clean up construction debris and trash, including concrete dust throughout the house;

b) Locate the source of water leaks in his basement;

c) Spend hours meeting with contractors and consultants to determine appropriate means to correct defects in his home; and

d) Potentially expend large sums of his own money to correct defects in his home which are the responsibility of defendants.

## COUNT I – BREACH OF CONTRACT

22. Plaintiff hereby incorporates by reference allegations as set forth in paragraphs 1-21, above.

23. Defendants Hemingway, Pauley and Hudson have intentionally breached representations, contracts and warranties made to plaintiff and upon which plaintiff has relied to his detriment.

24. As a result of the breach of expressed and implied representations, warranties and contracts by defendants, plaintiff demands judgment against Hemingway, Pauley and Hudson for damages, including, but not limited to, the following:

a) Reimbursement for painting and drywall repair work in an amount of at least $4,115.00;

b) The cost of carpentry, carpet, tile and floor repair and other numerous repairs in the amount of at least $10,000.00;

c) The cost of repair to the basement wall of his home in an amount of at least $24,190.97;

d) The cost of obtaining technical engineering and structural consultants to design and inspect repairs to his home in an amount of at least $10,000.00;

e) Compensation for aggravation and inconvenience;

f) Compensation for the delay in completion of the plaintiff's home and attendant damages sustained as a result of increased mortgage rates, loss of tax deductions, rent increases, moving and storage expenses;

g) The difference in value as between the home plaintiff bargained for and the home that was delivered to him in defective condition;

h) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%); and

i) In the alternative, that defendants, one or all of them, repurchase plaintiff's home for an amount adequate to make plaintiff whole.

## COUNT II – NEGLIGENCE

25. Plaintiff hereby incorporates by reference allegations as set forth in paragraphs 1-24, above.

26. Defendants Hemingway, Pauley and Hudson had a duty to construct and repair defects in the home purchased by the plaintiff in a good and workmanlike manner.

27. Defendants breached the aforesaid duty to plaintiff.

28. As a result of their negligence, said defendants are jointly and severally liable to plaintiff for damages, including, but not limited to, the following:

a) Reimbursement for painting and drywall repair work in an amount of at least $4,115.00;

b) The cost of carpentry, carpet, tile and floor repair and other numerous repairs in the amount of at least $10,000.00;

c) The cost of repair to the basement wall of his home in an amount of at least $24,190.97;

d) The cost of obtaining technical engineering and structural consultants to design and inspect repairs to his home in an amount of at least $10,000.00;

e) Compensation for aggravation and inconvenience;

f) Compensation for the delay in completion of the plaintiff's home and attendant damages sustained as a result of increased mortgage rates, loss of tax deductions, rent increases, moving and storage expenses;

g) The difference in value as between the home plaintiff bargained for and the home that was delivered to him in defective condition;

h) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%); and

i) In the alternative, that defendants, one or all of them, repurchase plaintiff's home for an amount adequate to make plaintiff whole.

## COUNT III – FRAUDULENT MISREPRESENTATION OF HEMINGWAY, PAULEY AND HUDSON

29. Plaintiff hereby incorporates by reference allegations as set forth in paragraphs 1-28, above.

30. Defendants Hemingway, Pauley and Hudson made fraudulent misrepresentations unto plaintiff to induce him to enter into the aforesaid Real Estate Sales and Purchase Agreement, more specifically as follows:

a) Hemingway and Pauley represented that the plaintiff's home would be constructed to a quality of high standard. Said representations were intentionally false and misleading.

b) Hemingway represented that it would complete the construction of plaintiff's townhome within six (6) months after commencement of construction. Said representation was intentionally false as an inducement to obtain money from plaintiff.

c). Hemingway, through Pauley and Hudson, warranted that plaintiff's home would be free of defective conditions. Said representations were intentionally false and made as an inducement for plaintiff to pay money unto Hemingway.

d) Hemingway agreed to pay any expenses incurred by plaintiff to correct defects in his townhome. Said agreement was fraudulent in that it was made upon intentionally false representations by defendant Hemingway through Pauley and Hudson and as an inducement to plaintiff to pay money unto Hemingway.

e) Plaintiff relied to his detriment upon the representations and misrepresentations of defendants.

31. As a result of the fraudulent misrepresentation by defendants Hemingway, Pauley and Hudson, defendants are liable to plaintiff for damages, including, but not limited to, the following:

a) Reimbursement for painting and drywall repair work in an amount of at least $4,115.00;

b) The cost of carpentry, carpet, tile and floor repair and other numerous repairs in the amount of at least $10,000.00;

c) The cost of repair to the basement wall of his home in an amount of at least $24,190.97;

d) The cost of obtaining technical engineering and structural consultants to design and inspect repairs to his home in an amount of at least $10,000.00;

e) Compensation for aggravation and inconvenience;

f) Compensation for the delay in completion of the plaintiff's home and attendant damages sustained as a result of increased mortgage rates, loss of tax deductions, rent increases, moving and storage expenses;

g) The difference in value as between the home plaintiff bargained for and the home that was delivered to him in defective condition;

h) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%);

i) Punitive damages in an amount sufficient to deter such fraudulent misrepresentation on the part of said defendants in the future; and

j) In the alternative, that defendants, one or all of them, repurchase plaintiff's home for an amount adequate to make plaintiff whole.

COUNT IV – NEGLIGENCE ON THE PART OF DANIEL LUCAS HART

32. Plaintiff hereby incorporates by reference allegations as set forth in paragraphs 1-31, above.

33. Defendant Hart had a professional and a common law duty to design and prepare architectural, structural drawings and specifications for the construction of plaintiff's home in a non-negligent fashion.

34. Defendant Hart had a duty to submit or direct that all drawings and design documents be submitted to appropriate governmental and code authorities for approval and inspection.

35. Defendant Hart had a duty to assure that the construction of plaintiff's home was done in compliance with building codes, the regulations of the City of Charleston, appropriate design and construction documents and in a good and workmanlike manner.

36. Defendant Hart had a duty to design and specify adequate foundations, basement walls and footer drains for the plaintiff's home, and to prepare structural drawings of footer, foundation and basement wall cross sections and elevations.

37. Defendant Hart breached or altogether failed to perform the duties as stated in paragraphs 33-36, above and other professional duties.

38. As a result of Hart's professional errors and omissions, plaintiff's home is defective, unsafe and the basement wall is cracking, structurally defective and allows ingress of water and moisture.

39. As a result of the negligence of defendant Hart, Hart is liable to plaintiff for damages. including, but not limited to, the following:

a) Reimbursement for painting and drywall repair work in an amount of at least $4,115.00;

b) The cost of carpentry, carpet, tile and floor repair and other numerous repairs in the amount of at least $10,000.00;

c) The cost of repair to the basement wall of his home in an amount of at least $24,190.97;

d) The cost of obtaining technical engineering and structural consultants to design and inspect repairs to his home in an amount of at least $10,000.00;

e) Compensation for aggravation and inconvenience;

f) Compensation for the delay in completion of the plaintiff's home and attendant damages sustained as a result of increased mortgage rates, loss of tax deductions, rent increases, moving and storage expenses;

g) The difference in value as between the home plaintiff bargained for and the home that was delivered to him in defective condition;

h) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%); and

i) In the alternative, that defendant purchase plaintiff's home for an amount adequate to make plaintiff whole.

## COUNT V – NEGLIGENCE AS AGAINST HEMINGWAY, PAULEY AND HUDSON

40. Plaintiff hereby incorporates by reference allegations as set forth in paragraphs 1-39, above.

41. Defendants Hemingway, Pauley and Hudson had a duty to plaintiff to assure that plaintiff's home was constructed in a good and workmanlike manner, without defects, and in compliance with city building regulations, building codes and design drawings.

42. Defendants Hemingway, Pauley and Hudson had a duty to plaintiff to repair any defects in material and workmanship in plaintiff's home in a good and workmanlike manner and in compliance with industry standards.

43. Defendants Hemingway, Pauley and Hudson, jointly and severally, breached the aforesaid duties to plaintiff and, as a result, plaintiff has been damaged and defendants are liable to plaintiff for damages, including, but not limited to, the following:

a) Reimbursement for painting and drywall repair work in an amount of at least $4,115.00;

b) The cost of carpentry, carpet, tile and floor repair and other miscellaneous repairs in the amount of at least $10,000.00;

c) The cost of repair to the basement wall of his home in an amount of at least $24,190.97;

d) The cost of obtaining technical engineering and structural consultants to design and inspect repairs to his home in an amount of at least $10,000.00;

e) Compensation for aggravation and inconvenience;

f) Compensation for the delay in completion of the plaintiff's home and attendant damages sustained as a result of increased mortgage rates, loss of tax deductions, rent increases, moving and storage expenses;

g) The difference in value as between the home plaintiff bargained for and the home that was delivered to him in defective condition;

h) Pre-judgment and post-judgment interest at the statutory rate of ten percent (10%); and

i) In the alternative, that defendants, one or all of them, repurchase plaintiff's home for an amount adequate to make plaintiff whole.

WHEREFORE, plaintiff respectfully demands judgment as against defendants, jointly and severally, for all damages as aforesaid, including punitive damages, together

with pre-judgment and post-judgment interest, his attorney's fees, costs and expenses necessarily incurred, and such further additional damages as may be awarded by the Court and jury.

PLAINTIFF DEMANDS A TRIAL BY JURY.

GREGORY T. LAGOS

By Counsel

David V. Moore, Esquire
MOORE & WEBER, PLLC
179 Summers Street, Suite 603
Post Office Box 945
Charleston, West Virginia 25323
(304) 346-4083
West Virginia State Bar No. 2607

# VERIFICATION

I, Gregory T. Lagos, after being first duly sworn, say that the facts and allegations contained in the foregoing "**Complaint**" are true, except insofar as they are stated to be upon information and belief, and that insofar as they are stated to be upon information and belief, I believe them to be true.

GREGORY T. LAGOS

Taken, subscribed and sworn to before me this 9th day of January, 2001.

My commission expires: March 31, 2009.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
SHERRY L. COTTRELL
c/o MOORE & WEBER, PLLC
179 SUMMERS STREET, SUITE 603
CHARLESTON, WEST VIRGINIA 25323
My Commission Expires March 31, 2009

Notary Public

# THE CINCINNATI INSURANCE COMPANY

P.O. BOX 145496, CINCINNATI, OHIO 45250-5496
(513) 870-2000

A Stock Insurance Company

CPP 067 99 36
Previous Policy No.

## COMMON POLICY DECLARATIONS

RENEWAL

| DECLARATIONS | POLICY NUMBER CPP 067 99 36 |
|---|---|
| NAMED INSURED | HEMINGWAY PLACE LLC |
| ADDRESS (Number & Street, Town, County, State & Zip No.) | C/O HARBINGER DEVELOPMENT<br>1591 E. WASHINGTON ST., SUITE 200<br>CHARLESTON, WV 25311 |

CY
THN PMS NOV 22 1999

Policy Period: At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE FROM: 12-01-1999 TO: 12-01-2000

Agency PATTERSON, BELL AND CRANE COMPANY 47-019

City CHARLESTON, WV

modol

PS2 PMS NOV 19 1999

Legal Entity/Business Description
CORPORATION

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS: (show numbers)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| IA102 | 12/96 | IA904 | 01/92 | IA4124 | 02/96 | GA501 | 07/98 |
| GA509 | 01/87 | MA512 | 06/95 | MA508 | 01/97 | AA501 | 01/92 |

MOD P 01 A

DMH SC7
11-13-1999

RECEIVED
NOV 18 1999 CW

Countersigned DATA ENTRY (Date) By ____________________ (Authorized Representative)

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. This provision does not apply in Arizona, Virginia and Wisconsin.

Kenneth W. Stecher
Secretary

John J. Schiff, Jr.
President

[redacted]

his is a true & certified copy of policy COMPANY COPY

hristopher Kendall, Vice President

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections and Surveys**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer of Your Rights and Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1982, 1983

Attached POLICY NUMBER CPP 067 99 36

# SUMMARY OF PREMIUMS CHARGED

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED**

| | |
|---|---|
| Commercial Property Coverage Part | $ |
| Commercial General Liability Coverage Part | $ 8,129 |
| Commercial Crime Coverage Part | $ |
| WEST VIRGINIA EMPLOYERS LIABILITY | $ 200 |
| CONTRACTORS EQUIPMENT | $ 922 |
| BUILDERS RISK | $ 2,960 |
| WEST VIRGINIA 1% SURCHARGE | $ 122 |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| | $ |
| Installment Charge | $ |
| Sub-Total | $ 12,333 |
| Commercial Auto Coverage Part INCL WV 1% SURCHARGE | $ 1,359 |
| Auto Installment Charge | $ |
| Annual Total | $ 13,692 |

**PAYMENTS**

| | All Other: First Installment | All Other: Remaining Installment | + | Auto: First Installment | Auto: Remaining Installment | = | Total Installment: First Installment | Total Installment: Remaining Installment |
|---|---|---|---|---|---|---|---|---|
| ☐ SEMI-ANNUAL | $ | $ | + | $ | $ | = | $ | $ |
| ☐ QUARTERLY | $ | $ | + | $ | $ | = | $ | $ |

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage and/or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| ITEM | STREET ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|
| 1. | OFF GREENBRIER STREET<br>CHARLESTON, WV 25311 | | | |

# NOTICE TO POLICYHOLDERS
# EMPLOYMENT RELATED PRACTICES EXCLUSION

This is a notice of a change in your policy. NO COVERAGE IS PROVIDED BY THIS NOTICE nor can it be construed to replace any provisions of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverage you are provided. If there is any conflict between the policy and this notice, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

Your renewal policy contains an Employment Related Practices Exclusion. This endorsement excludes all liability coverage arising out of employment related practices, policies, acts or omissions including but not limited to refusal to employ, termination, coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination.

# THE CINCINNATI INSURANCE COMPANY

P.O. BOX 145496, CINCINNATI, OHIO 45250-5496
A Stock Insurance Company

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: CPP 067 99 36 Effective Date: 12-01-1999

Named Insured: IS THE SAME AS IT APPEARS ON THE COMMON POLICY DECLARATION

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ 1,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | |
| FIRE OR EXPLOSION DAMAGE LIMIT<br>$100,000 limit unless otherwise indicated herein: | $ REFER TO GA210 | ANY ONE FIRE OR EXPLOSION |
| MEDICAL EXPENSE LIMIT<br>$5,000 limit unless otherwise indicated herein: | $ REFER TO GA210 | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASIS<br>A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | RATE: Products/ Completed Operations | RATE: ALL OTHER | ADVANCE PREMIUM: Products/ Completed Operations | ADVANCE PREMIUM: ALL OTHER |
|---|---|---|---|---|---|---|
| CARPENTRY | 91340 | B 250,000 | 5.399 | 13.215 | 1,350 | 3,304 |
| CONT.-REPAIR FOR BLDG. | 91585 | E 2,400,000 TOTAL COST | 1.081 | 0.302 | 2,594 | 725 |
| BROADENED COVERAGE | 20290 | | | | | 75 |
| BI EXCEPTIONS TO POLLUTANT EXCLUSION | 20410 | | | | | 81 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM $8,129

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| GA101 | 01/95 | GA468 | 09/95 | GA4089 | 01/99 | GA210 | 01/95 |
| GA4092 | 01/99 | CG2026 | 11/85 | GA321 | 01/95 | GA478 | 11/94 |

QUICK REFERENCE

# COMMERCIAL GENERAL LIABILITY COVERAGE PART

READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGES**
Named Insured and Mailing Address
Policy Period
Description of Business and Location
Coverages and Limits of Insurance


| | | Beginning on Page |
|---|---|---|
| **SECTION I--COVERAGES** | | |
| Coverage A-- Bodily Injury and Property Damage Liability | Insuring Agreement | 1 |
| | Exclusions | 1 |
| Coverage B-- Personal and Advertising Injury Liability | Insuring Agreement | 4 |
| | Exclusions | 4 |
| Coverage C-- Medical Payments | Insuring Agreement | 5 |
| | Exclusions | 5 |
| Supplementary Payments | | 5 |
| **SECTION II--WHO IS AN INSURED** | | 6 |
| **SECTION III--LIMITS OF INSURANCE** | | 7 |
| **SECTION IV--COMMERCIAL GENERAL LIABILITY CONDITIONS** | | 7 |
| Bankruptcy | | 7 |
| Duties In The Event Of Occurrence, Offense, Claim Or Suit | | 8 |
| Legal Action Against Us | | 8 |
| Other Insurance | | 8 |
| Premium Audit | | 9 |
| Representations | | 9 |
| Separation Of Insureds | | 9 |
| Transfer Of Rights Of Recovery Against Others To Us | | 9 |
| Two Or More Coverage Forms Or Policies Issued By Us | | 9 |
| When We Do Not Renew | | 9 |
| **SECTION V--DEFINITIONS** | | 9 |
| **NUCLEAR ENERGY LIABILITY EXCLUSION** | | 13 |


**COMMON POLICY CONDITIONS**
Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I--COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      "Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of an insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

      (2) That the insured would have in the absence of the contract or agreement.

   c. **Liquor Liability**

      "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

      This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   d. **Workers Compensation and Similar Laws**

      Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollutant**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

However, this exclusion does not apply to "bodily injury" to any person injured while on any premises, site or location owned or occupied by, or rented or loaned to, you provided the injury is caused by the inadequate ventilation of vapors and the person injured is first exposed to such vapors during the policy period and, within 30 days of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. This exception shall apply only to Named Insureds; we shall have no duty to defend or pay damages for any person or organization that is not a Named Insured.

For the purpose of the exception granted in this subparagraph (a) only, vapors means any gaseous or airborne irritant or airborne contaminant, other than asbestos, which is discharged, dispersed, or released or escapes from materials, machinery or equipment used in the service or maintenance of the premises. Vapors does not mean any gaseous or airborne irritants or contaminants used in a manufacturing process or which is the product or by-product of any manufacturing process;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d) (i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or "suit" by or on behalf of a governmental authority for

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance

damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment.

Exclusion **f. Pollutant** applies to every injury to person or property caused directly or indirectly by pollutants regardless of whether:

(a) The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

(b) The insured uses, generates or produces the pollutant.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 50 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of an insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1990

the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Asbestos**

"Bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos, in any form or transmitted in any manner.

Exclusions c. through o. do not apply to damage by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS-- COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Personal injury" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge,

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.

dispersal, seepage, migration, release or escape of pollutants at any time; or any loss, cost or expense arising out of any:

(1) Request, demand, or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

## COVERAGE C. MEDICAL PAYMENTS

1. **Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS--COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the inves-

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

tigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II--WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III--LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

3. The Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

4. Subject to the limits described in **2.** above and **5.** and **6.** below, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C;

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

5. The Fire or Explosion Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire or explosion.

6. The Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV--COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

Copyright ©1994 The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company and contains copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1992

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire or Explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over any other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. The premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for pre-

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.

mium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "occurrence", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

10. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V--DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

Advertising means an advertisement, publicity article, broadcast or telecast.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in **a.** above; or

(b) The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.

f. Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent; or

c. An appeal of a civil proceeding.

17. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

18. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means "source material", "special nuclear material" or "by-product material";

   "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

   "waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility";

   "nuclear facility" means:

   (a) Any "nuclear reactor";

   (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

   (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

   "property damage" includes all forms of radioactive contamination of property.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT OF OTHER INSURANCE CONDITION (OCCURRENCE VERSION)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (OCCURRENCE VERSION)

Paragraph **4.b.** of the **Other Insurance** Condition - (**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**) is replaced by the following:

**4. Other Insurance**

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire or Explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(c) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of COVERAGE **A** (SECTION I).

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under COVERAGES **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

# 1994 NOTICE TO POLICYHOLDERS GENERAL LIABILITY PROGRAM

**BROADENINGS, RESTRICTIONS AND CLARIFICATION OF COVERAGE**

This is a summary of the major changes found in the new editions of the Commercial General Liability Coverage Forms. NO COVERAGE IS PROVIDED BY THIS SUMMARY nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

There are two versions of the Commercial General Liability Coverage Form, the "Occurrence" and "Claims-made" versions (**GA 101** and **CG 0002**). The areas within the policy that broaden, reduce or clarify coverage are highlighted below. We have followed the policy sequence of provisions in setting out this material.

**<u>BROADENINGS OF COVERAGE</u>**

**GA 101 -- Commercial General Liability Coverage Form (Occurrence Version)**

This Coverage Form has been broadened incorporating our current "On Premises Exception to the Pollutant Exclusion" (form **GA-221** ) directly into forms.

**GA 101 -- Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 -- Commercial General Liability Coverage Form (Claims-Made Version)**
**GA 111 -- Owners and Contractors Protective Liability Coverage Form**
**GA 115 -- Liquor Liability Coverage Form (Occurrence Version)**
**CG 00 34 -- Liquor Liability Coverage Form (Claims-Made Version)**
**GA 114 -- Products/Completed Operations Liability Coverage Form (Occurrence Version)**
**CG 00 38 -- Products/Completed Operations Liability Coverage Form (Claims-Made Version)**
**CG 00 39 -- Pollution Liability Coverage Form (Designated Sites)**
**CG 04 24 -- Coverage for Injury to Leased Workers**
**CG 28 07 -- Principals Protective Liability Coverage**

These coverage forms and endorsement **CG 28 07** are revised to broaden coverage with respect to liability of leased workers. Two new definitions ("employee" and "leased worker") have been added to give leased workers the same status (both coverage and exclusions) under the CGL program as the traditional employee. Endorsement **CG 04 24** provides an optional coverage for the insured's liability for injuries sustained by leased workers while performing duties related to the conduct of the insured's business. A leased worker is defined as "a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**GA 101 -- Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 -- Commercial General Liability Coverage Form (Claims-Made Version)**
**GA 114 -- Products/Completed Operations Liability Coverage Form (Occurrence Version)**
**CG 00 38 -- Products/Completed Operations Liability Coverage Form (Claims-Made Version)**

These coverage forms have been revised to broaden coverage with respect to the "insured contract" definition. Previously, the exception to paragraph f. applied to any person or organization. There is now coverage for liability assumed in contracts or agreements that indemnify persons or organizations other than a railroad for injury or damage arising out of construction or demolition operations within 50 feet of railroad property and affecting such property.

**CG 00 39 -- Pollution Liability Coverage Form (Designated Sites)**
**CG 00 40 -- Pollution Liability Limited Coverage Form (Designated Sites)**
**CG 03 00 -- Deductible Liability Insurance**
**CG 28 33 -- Voluntary Clean-Up Costs Reimbursement**

There is a broadening in coverage in these coverage forms and endorsements when a loss exceeds the occurrence limit. Previously, deductibles reduced both damages and limits. Under the revised endorsement only damages will be reduced by the deductible.

**CG 20 23 -- Additional Insured -- Executors, Administrators, Trustees or Beneficiaries**

This endorsement now provides coverage to executors, administrators, trustees or beneficiaries of an insured's living trust while acting within the scope of their duties as such. Previously, coverage applied only to the estate.

**CG 22 65 -- Optical and Hearing Aid Establishments**

Coverage in this endorsement is broadened to provide that employees of optical and hearing aid establishments will be covered for their liability arising out of rendering or failure to render professional health care services with respect to optometry or optical or hearing aid services.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1993

**CG 22 69 -- Druggists**

Coverage in this endorsement is broadened to provide that employees of druggists will be covered for their liability arising out of rendering or failure to render professional health care services as pharmacists.

**CG 24 17 -- Contractual Liability - Railroads**

This new endorsement is optional. It amends paragraph **c.** of the definition of "insured contract" and deletes the exception for construction or demolition operations within 50 feet of a railroad to provide contractual liability coverage under the contractor's CGL policy.

**BROADENING**

**GA 101 -- Commercial General Liability Coverage Form (Occurrence Version)**
**GA 102 -- Employee Benefit Liability Coverage Form**
**GA 111 -- Owners and Contractors Protective Liability Coverage Form**
**GA 114 -- Products/Completed Operations Liability Coverage Form**
**GA 115 -- Liquor Liability Coverage Form**
**GA 210 -- Commercial General Liability Broad Form Liability Endorsement**

These coverage forms have been revised to broaden coverage under Section II - Who Is an Insured with respects to a limited liability company.

**GA 101 -- Commercial General Liability Coverage Form (Occurrence Version)**
**GA 210 -- Commercial General Liability Broad Form Liability Endorsement**

We have increased the Loss of earnings under the supplementary payments to $250 under the **GA 101** and $350 under the **GA 210.**

**RESTRICTIONS IN COVERAGE**

**GA 101 -- Commercial General Liability Coverage Form (Occurrence Version)**

- This coverage form has been revised incorporating our current asbestos exclusion (**GA 305**) directly into forms. The **GA 305** will still need to be attached to those liability forms that do not incorporate this exclusion.
- The Coverage B -Personal and advertising Injury Liability has been revised to add a "pollutants" exclusion.

**CG 20 21 -- Additional Insured -- Volunteers**
**CG 20 22 -- Additional Insured -- Church Members, Officers and Volunteer Workers**

These endorsements are revised to include the consequential injury, third-party action-over and professional health care exclusions to provide for consistency with the CGL policy. In addition, there is no coverage for volunteer workers with respect to "personal injury" to other volunteer workers, the Named Insured, the Named Insured's employees and the Named Insured's partners and members.

**GA 321 -- Employment-Related Practices Exclusion**

The personal injury exclusion in this endorsement will now apply: (1) when the insured may be liable as an employer or in any other capacity and (2) when the obligation to share or repay damages arising from employment-related practices exists. Also, there is no coverage for consequential injury to a spouse, child, parent, brother or sister at whom the employment-related practice is directed because of "bodily injury" and "personal injury".

**CG 22 73 -- Exclusion -- Oil or Gas Producing Operations**

This revised exclusion endorsement now applies to locations on which any insured, rather than any Named Insured, is performing operations. This tracks with current wording in the CGL.

**CG 28 07 -- Principals Protective Liability Coverage**

The pollution exclusion is revised in several respects, particularly with regard to property owned or occupied by or rented or loaned to any insured. Therefore, this revision to the pollution exclusion in this endorsement may broaden its application under certain circumstances. This tracks with current wording in the OCP coverage form.

**CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS -- COVERAGE FORMS**

All General Liability coverage forms contain minor editorial revisions to provide for consistency among policies. In addition, these coverage forms have been revised to incorporate other various revisions in order to clarify coverage. Those changes to each individual coverage form are described below:

**GA 101 -- Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 -- Commercial General Liability Coverage Form (Claims-Made Version)**

Contains copyrighted material of Insurance Services Office, Inc., with its permission

- The Coverage **A** - Bodily Injury and Property Damage Liability exclusions under Section I now contain titles to provide for easier reading.
- The expected or intended injury exclusion is revised to clarify "Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of an insured or which is in fact expected or intended by the insured.
- The mobile equipment exclusion is revised to clarify that liability arising from mobile equipment, which is not being raced, but being used to prepare for prearranged racing events is covered. Coverage is still excluded for mobile equipment engaging or preparing to engage in these events.
- The Fire Damage Legal or Explosion Liability exception and the LIMITS OF INSURANCE section in the CGL coverage forms are revised to clarify that coverage exists for situations where an insured is given permission to occupy a portion of a building without the transfer of rent in the form of money.
- Paragraph **1.b.** under Coverage **C** (MEDICAL PAYMENTS) has been editorially revised to add the word "administered."
- The WHO IS AN INSURED provision is revised to clarify that if the Named Insured is a partnership, joint venture or limited liability company, employees are **not** insureds for "bodily injury" or "personal injury" to partners or members. This provision is also revised to clarify that there is no coverage for property in the care, custody or control of the Named Insured. In addition, this provision is reformatted to provide for easier reading.
- The title in the DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT will now include the term "OFFENSE" to reflect that Coverage **B** - Personal and Advertising Injury Liability is triggered by an offense.
- The EXTENDED REPORTING PERIOD provision in the claims-made version of this coverage form is editorially revised to clarify the language.
- The exceptions in the "insured contract" definition are reformatted and numbered in order to provide for easier reading.
- The DEFINITIONS Section has been revised to add, "employees", "executive officer", "leased workers" and "temporary worker" definitions.

**GA 101 -- Commercial General Liability Coverage Form (Occurrence Version)**
**GA 114 -- Products/Completed Operations Liability Coverage Form (Occurrence Version)**
**GA 115 -- Liquor Liability Coverage Form**

Under Section IV - Conditions - We have added item **9.** Two or More Coverage Forms or Policies Issued By Us.

**GA 101 -- Commercial General Liability Coverage Form (Occurrence Version)**
**GA 102 -- Employee Benefit Liability Coverage Form**
**GA 108 -- Railroad Protective Liability Coverage Form**
**GA 114 -- Products/Completed Operations Liability Coverage Form (Occurrence Version)**
**GA 115 -- Liquor Liability Coverage Form**

Under Definitions we have clarified "suit" to mean money damages and to include **c.** An appeal of a civil proceeding.

**GA 101 -- Commercial General Liability Coverage Form (Occurrence Version)**
**GA 102 -- Employee Benefit Liability Coverage Form**
**GA 108 -- Railroad Protective Liability Coverage Form**
**GA 111 -- Owners And Contractors Protective Liability Coverage Form**

These coverage forms have been revised to better clarify what we deem to be a "pollutant".

**GA 111 -- Owners And Contractors Protective Liability Coverage Form -- Coverage For Operations Of Designated Contractor**

- The exclusions under Section I now contain titles to provide for easier reading.
- The Work Completed or Put to Intended Use exclusion is revised to clarify that the exclusion does not apply to another contractor or subcontractor working for the "contractor".
- The mobile equipment exclusion is revised to clarify that liability arising from mobile equipment used to prepare for prearranged racing events is covered. Coverage is still excluded for mobile equipment engaging or preparing to engage in these events.
- The WHO IS AN INSURED provision is revised to clarify that if the Named Insured is a partnership or joint venture, employees are **not** insureds for "bodily injury" to partners or members. This provision is also revised to clarify that there is no coverage for property in the care, custody or control of the Named Insured. In addition, this provision is reformatted to provide for easier reading.
- The DEFINITIONS Section has been revised to add, "employee", "executive officer", "leased worker" and "temporary worker" definitions.

**GA 115 -- Liquor Liability Coverage Form (Occurrence Version)**
**CG 00 34 -- Liquor Liability Coverage Form (Claims-Made Version)**

- The exclusions under Section I now contain titles to provide for easier reading.
- The WHO IS AN INSURED provision is revised to clarify that if the Named Insured is a partnership or joint venture, employees are **not** insureds for "injury" to partners or members. This provision is also revised to clarify that there is no coverage for property in the care, custody or control of the Named Insured. In addition, this provision is reformatted to provide for easier reading.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1993

- The EXTENDED REPORTING PERIOD provision in the claims-made version of this coverage form is editorially revised to clarify the language.
- The DEFINITIONS Section has been revised to add "executive officer" and "temporary worker" definitions.

**GA 108 -- Railroad Protective Liability Coverage Form**

- The exclusions under Section I now contain titles to provide for easier reading.
- The DEFINITIONS Section has been revised to add an "executive officer" definition.

**GA 114 -- Products/Completed Operations Liability Coverage Form (Occurrence Version)**
**CG 00 38 -- Products/Completed Operations Liability Coverage Form (Claims-Made Version)**

- The exclusions under Section I now contain titles to provide for easier reading.
- The WHO IS AN INSURED provision is revised to clarify that if the Named Insured is a partnership or joint venture, employees are **not** insureds for "bodily injury" to partners or members. This provision is also revised to clarify that there is no coverage for property in the care, custody or control of the Named Insured. In addition, this provision is reformatted to provide for easier reading.
- The EXTENDED REPORTING PERIOD provision in the claims-made version of this coverage form is editorially revised to clarify the language.
- The exception in the "insured contract" definition are reformatted and numbered in order to provide for easier reading.
- The DEFINITIONS Section has been revised to add "executive officer" and "temporary worker" definitions.

**CG 00 39 -- Pollution Liability Coverage Form (Designated Sites)**
**CG 00 40 -- Pollution Liability Limited Coverage Form (Designated Sites)**

- The exclusions under Section I now contain titles to provide for easier reading.
- The WHO IS AN INSURED provision is revised to clarify that if the Named Insured is a partnership or joint venture, employees are **not** insureds for "bodily injury" to partners or members. This provision is also revised to clarify that there is no coverage for property in the care, custody or control of the Named Insured. In addition, this provision is reformatted to provide for easier reading.
- Under the DUTIES IN THE EVENT OF A POLLUTION INCIDENT, CLAIM OR SUIT Condition, we have added language providing that an insured must notify the insurer of the nature and location of any injury or damage arising out of a "pollution incident".
- The DEFINITIONS Section has been revised to add "executive officer" and "temporary worker" definitions.

**CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS -- ENDORSEMENTS**

**CG 02 24 -- Earlier Notice of Cancellation Provided By Us (CGL)**
**CG 28 04 -- Earlier Notice of Cancellation Provided By Us (OCP)**
**IA 4086 -- Earlier Notice of Cancellation Provided By Us (CGL)**

These new endorsements replace withdrawn endorsements **CG 02 12** and **CG 28 28** and provide a mechanism for an earlier notice of cancellation.

**CG 20 07 -- Additional Insured -- Engineers, Architects or Surveyors (CGL)**
**CG 20 09 -- Additional Insured -- Owners, Lessees or Contractors (Form A)**
**CG 20 10 -- Additional Insured -- Owners, Lessees or Contractors (Form B)**
**CG 20 31 -- Additional Insured -- Engineers, Architects or Surveyors (OCP)**

These endorsements are revised to clarify that only ongoing operations performed by the insured or on the insured's behalf are intended to be covered. Since **CG 20 07** is limited to apply to the CGL policy, new endorsement **CG 20 31** has been created to apply to the OCP policy.

**CG 20 17 -- Additional Insured -- Townhouse Associations**

This endorsement is revised to clarify that the "property to which the townhouse owner has title" is **real** property.

**CG 22 36 -- Exclusion - Products and Professional Services - Druggists**
**CG 22 37 -- Exclusion - Products and Professional Services - Optical and Hearing Aid Establishments**
**CG 22 39 -- Exclusion - Camps or Campgrounds**
**CG 22 44 -- Exclusion - Services Furnished By Health Care Providers**
**CG 22 45 -- Exclusion - Specified Therapeutic or Cosmetic Services**
**CG 22 65 -- Optical and Hearing Aid Establishments**
**CG 22 69 -- Druggists**
**CG 22 71 -- Colleges or Schools (Limited Form)**
**CG 22 72 -- Colleges or Schools**

These endorsements are revised to clarify that the services excluded are "professional **health care** services." Also, to modernize some of these endorsements and to better define the types of services intended to be excluded, new generic terms and phrases have been added.

Contains copyrighted material of Insurance
Services Office, Inc., with its permission

**CG 22 41 -- Exclusion - Housing Projects Sites**

This endorsement is amended to clarify that coverage is excluded only for buildings which are to be demolished. This exclusion will apply only during the period of vacancy preceding demolition operations, and while the building is actually in the process of being demolished. Further, the language is revised to clarify that the exclusion only applies to bodily injury and property damage liability.

**CG 22 51 -- Exclusion - Law Enforcement Agencies**

This endorsement is revised to clarify that the exclusion applies to acts or omissions **arising out of law enforcement activities** performed by the named insured's police department or law enforcement agency.

**CG 24 04 -- Waiver Of Transfer Of Rights Of Recovery Against Others To Us (CGL)**

This endorsement is amended to make it applicable to only the CGL Coverage Form. In addition, it is revised to clarify that the endorsement applies to both ongoing and completed operations. This endorsement also contains various minor editorial changes.

**GA 320 -- Employment-Related Practices Exclusion**

This endorsement is revised to clarify that the injury must be to the person at whom the employment-related practice is directed, or to that person's spouse, child, parent, brother or sister. In addition, this endorsement is no longer for use with the Liquor Liability policy.

**CG 21 35 -- Exclusion --Coverage C -- Medical Payments**
**CG 21 39 -- Contractual Liability Limitation**
**CG 21 46 ;-- Abuse or Molestion Exclusion**
**CG 21 49 -- Total Pollution Exclusion Endorsement**
**CG 22 30 -- Exclusion -- Corporal Punishment**
**CG 22 34 -- Exclusion - Construction Management Errors and Omissions**
**CG 22 52 -- Exclusion - Medical Payments Coverage (Inmates, Patients or Prisoners)**
**CG 22 67 -- Corporal Punishment**
**CG 22 68 -- Operation of Customers' Autos on Particular Premises**
**CG 22 75 -- Professional Liability Exclusion -- Computer Software**
**CG 24 08 -- Liquor Liability**
**CG 24 09 -- Governmental Subdivisions**
**CG 24 10 -- Excess Provision -- Vendors**
**CG 24 11 -- Fiduciaries - Fiduciary Interest**
**CG 27 01 -- Supplemental Extended Reporting Period Endorsement (CGL)**
**CG 27 02 -- Exclusion of Specific Accidents, Products, Work or Locations (CGL)**
**CG 27 03 -- Amendment of Section V -- Extended Reporting for Specific Accidents, Products, Work or Locations**
**CG 27 04 -- Supplemental Extended Reporting Period for Specific Accidents, Products, Work or Locations (CGL)**
**CG 27 05 -- Exclusion of Specific Accidents, Products, Work or Locations (Products)**
**CG 28 02 --Insured Site Definition (Contractors)**
**CG 28 03 --Supplemental Extended Reporting Period Endorsement**
**CG 28 31 -- Pollution Exclusion Amendment**
**CG 28 34 -- Supplemental Extended Reporting Period Endorsement**
**CG 28 35 -- Supplemental Extended Reporting Period for Specific Accidents, Products, Work or Locations**
**CG 29 88 -- Waiver of Transfer of Rights of Recovery Against Others To Us (OCP)**

These endorsements are revised to incorporate various editorial, reformatting and other changes in order to provide for consistency with other Commercial General Liability forms. Since **CG 27 02** and **CG 24 04** are being limited for use with only the CGL policy, **CG 27 05** has been introduced for use with Products policy, and **CG 29 88** has been introduced for use with the OCP policy.

**GA 210 -- Commercial General Liability Broad Form Liability Endorsement**

Under Defintions we have clarified "suit" to mean money damages and to include c. An appeal of a civil proceeding.

Contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1993

# NOTICE TO POLICYHOLDERS - ADDITIONAL INSURED CHANGES

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the significant broadenings, restrictions and clarifications of coverage that were made in each endorsement. This notice does not reference every editorial change made to these endorsements.

Please read your policy, and the endorsements attached to your policy, carefully.

## BROADENINGS OF COVERAGE

**GA 4092 01 99 - Amendment of Other Insurance Condition (Occurrence Version)**
**CG 00 56 03 97 - Amendment of Other Insurance Condition (Claims-Made Version)**

These endorsements amend the OTHER INSURANCE Condition in the CGL policy to make an insured's own CGL coverage excess insurance over the insurance provided by any other liability policy when that same insured is covered by that other policy as an additional insured. Since primary coverage in those situations will be provided by another policy, the insured's limits of insurance will be less likely to be affected by losses covered by the other policy under its additional insured endorsement. Coverage provided to an insured that is not named as an additional insured on another policy will continue to apply as primary insurance.

**CG 20 21 01 96 - Additional Insured - Volunteer Workers**
**CG 20 22 01 96 - Additional Insured - Church Members, Officers and Volunteer Workers**
**CG 20 30 01 96 - Oil or Gas Operations - Nonoperating, Working Interests**

These endorsements are revised to acknowledge the existence of a new form of business entity known as the limited liability company and by specifying members and managers of limited liability companies as insureds.

**GA 472 01 99 - Automatic Additional Insured - When Required in Contract or Agreement with You**

Certificates of insurance are now required only for oral contracts or agreements, not written.

**GA 443 01 99 - Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization (For Use When Contractual Liability Coverage Is Not Provided to You in this Policy)**

**GA 472 01 99 - Automatic Additional Insured - When Required in Contract or Agreement with You**

**GA 4077 01 99 - Additional Insured - Engineers, Architects, or Surveyors (Commercial General Liability Coverage Part)**

**GA 4078 01 99 - Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization**

**GA 4080 01 99 - Additional Insured - State or Political Subdivisions - Permits (Commercial General Liability Coverage Part)**

**GA 4081 01 99 - Additional Insured - State or Political Subdivisions - Permits Relating to Premises**

**GA 4082 01 99 - Additional Insured - Vendors**

**GA 4084 01 99 - Additional Insured - Designated Person or Organization**

**GA 4087 01 99 - Additional Insured - Engineers, Architects, or Surveyors (Owners and Contractors Protective Liability Coverage Part)**

**GA 4091 01 99 - Additional Insured - State or Political Subdivisions - Permits (Owners and Contractors Protective Liability Coverage Part)**

Added an excess clause to the above additional insured forms. The excess clause makes the coverage excess over other insurance available to the additional insured as an additional insured on another policy.

## RESTRICTIONS OF COVERAGE

**GA 443 01 99 - Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization (For Use When Contractual Liability Coverage Is Not Provided to You in this Policy)**


Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995, 1996

**GA 472 01 99 -** **Automatic Additional Insured - When Required In Contract or Agreement with You**

**GA 4075 01 99 -** **Additional Insured - Concessionaires Trading Under Your Name (Commercial General Liability Coverage Part)**

**GA 4076 01 99 -** **Additional Insured - Concessionaires Trading Under Your Name (Products/Completed Operations Coverage Part)**

**GA 4077 01 99 -** **Additional Insured - Engineers, Architects, or Surveyors (Commercial General Liability Coverage Part)**

**GA 4078 01 99 -** **Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization**

**GA 4079 01 99 -** **Additional Insured - Managers or Lessors of Premises**

**GA 4080 01 99 -** **Additional Insured - State or Political Subdivisions - Permits (Commercial General Liability Coverage Part)**

**GA 4081 01 99 -** **Additional Insured - State or Political Subdivisions - Permits Relating to Premises**

**GA 4083 01 99 -** **Additional Insured - Owners or Other Interests from Whom Land Has Been Leased**

**GA 4084 01 99 -** **Additional Insured - Designated Person or Organization**

**GA 4086 01 99 -** **Additional Insured - Grantor of Franchise**

**GA 4087 01 99 -** **Additional Insured - Engineers, Architects, or Surveyors (Owners and Contractors Protective Liability Coverage Part)**

**GA 4091 01 99 -** **Additional Insured - State or Political Subdivisions - Permits (Owners and Contractors Protective Liability Coverage Part)**

Added a sole negligence exclusion to the above additional insured forms. Coverage does not apply to liability arising out of the additional insured's sole negligence.

**GA 472 01 99 -** **Automatic Additional Insured - When Required In Contract or Agreement with You**

**GA 4078 01 99 -** **Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization**

Added an architects, engineers, or surveyors professional exclusion.

**GA 4085 01 99 -** **Additional Insured - Lessor of Leased Equipment**

Added a willful misconduct exclusion to the sole negligence exclusion, expanded the scope of the exclusion to apply to Personal and Advertising Injury, and expanded the scope of the exclusion to apply to the sole negligence and willful misconduct of the additional insured's employees.

<u>**CLARIFICATIONS OF COVERAGE**</u>

**GA 443 01 99 -** **Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization (For Use When Contractual Liability Coverage Is Not Provided to You in this Policy)**

**GA 472 01 99 -** **Automatic Additional Insured - When Required In Contract or Agreement with You**

**GA 4078 01 99 -** **Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization**

The titles of these endorsements have been revised to more accurately describe the intended use of these endorsements. Added language to clarify that the additional insured endorsement does not increase the limits of insurance afforded under the CGL.

**GA 4077 01 99 -** **Additional Insured - Engineers, Architects, or Surveyors (Commercial General Liability Coverage Part)**

**GA 4087 01 99 -** **Additional Insured - Engineers, Architects, or Surveyors (Owners and Contractors Protective Liability Coverage Part)**

The list of professional services performed by architects, engineers or surveyors has been revised to conform to standard industry terms.

Contains copyrighted material of Insurance
Services Office, Inc., with its permission

# COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

I. EMPLOYEE BENEFIT LIABILITY COVERAGE

A. The following is added to Section I - Coverages: EMPLOYEE BENEFIT LIABILITY COVERAGE.

1. **Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages caused by any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable arising out of the "administration" of the insured's "Employee Benefit Programs". This insurance applies only to negligent acts, errors or omissions which occur during the policy period and take place in the "coverage territory". We will have the right and duty to defend any "suit" seeking those damages. But:

(1) The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE;

(2) We may investigate and settle any claim or "suit" at our discretion;

(3) Our right and duty to defend ends when we have used up the applicable limits of insurance in the payment of judgments or settlements under coverage provided by this form.

2. **Exclusions.**

This insurance does not apply to any claim arising out of any of the following:

a. "Bodily injury".

b. Physical injury to tangible property, including all resulting loss of use of that property; or loss of use of tangible property that is not physically injured.

c. Acts, errors or omission of any insured that are dishonest, fraudulent, criminal or malicious.

d. Oral or written publication of material that libels or slanders a person or organization or disparages a person or organization's goods, products or services.

e. Oral or written publication of material that violates a person's right of privacy.

f. Discrimination or humiliation of any person or organization.

g. Failure of performance of contract by any insurer.

h. Failure of the insured to comply with any law concerning workers' compensation, unemployment insurance, social security, disability benefits, or any similar law.

i. Failure of stock shares to perform as represented by the insured, or any claim based upon advice given by an insured to an employee to participate or not to participate in stock subscription plans.

j. Fines or penalties imposed by law.

3. **Supplementary Payments.**

The SUPPLEMENTARY PAYMENTS - Section I Coverages A and B also apply to this Coverage.

B. Who Is An Insured

As respects Employee Benefit Liability Coverage, SECTION II–WHO IS AN INSURED is deleted in its entirety and replaced by the following:

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or lim-

ited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you and authorization by you to act in the "administration" of the "Employee Benefit Programs".

   b. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

C. Limit of Insurance

As respects Employee Benefit Liability Coverage, SECTION III - LIMITS OF INSURANCE is deleted in its entirety and replaced by the following:

1. The Limits of Insurance shown below and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The most we will pay for all damages arising out of any one Employee Benefit Liability Coverage claim or "suit" is $100,000.

3. The most we will pay for all Employee Benefit Liability Coverage claims or "suits" in the aggregate is $300,000.

4. Deductible Amount. Our obligation to pay damages on your behalf applies only to the amount of damages in excess of $1,000. The deductible amount applies to each claim or "suit".

If this Coverage Part is in effect for a period of more than one year, the limits apply separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

But if the policy period is extended for less than 12 months, the extended period will be deemed to be part of the last preceding period for purposes of determining the Limits of Insurance.

D. Additional Conditions

As respects Employee Benefit Liability Coverage, SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS is amended as follows:

1. Item 2. is deleted in its entirety and replaced by the following:

   2. Duties in The Event of Act, Error, Omission, Claim or Suit.

      a. You must see to it that we are notified promptly of an act, error or omission which may result in a claim. Notice should include:

         (1) How, when and where the act, error or omission took place; and

         (2) The names and addresses of any injured persons and witnesses.

      b. If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit".

      c. You and any other involved insured must:

         (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

         (2) Authorize us to obtain records and other information;

         (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

         (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

      d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

2. Item 4. is deleted in its entirety and replaced by the following:

   4. **Other Insurance.**

      If other valid and collectible insurance is available to the insured for a loss we cover under

this Coverage Part, our obligations are limited as follows:

a. Primary Insurance.

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in b. below.

b. Method of Sharing.

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

E. Additional Definitions

As respects Employee Benefit Liability Coverage, SECTION V - DEFINITIONS is amended as follows:

1. The following definitions are added:

20. "Administration" means:

a. Giving counsel to employees with respect to the "Employee Benefit Programs";

b. Interpreting the "Employee Benefit Programs";

c. The handling of records in connection with the "Employee Benefit Programs"; or

d. Effecting enrollment, termination, or cancellation of employees under the "Employee Benefit Programs";

provided all such acts are authorized by you.

21. "Employee Benefit Programs" means:

a. Group life insurance, group accident or health insurance;

b. Profit sharing plans, pension plans, employee stock subscription plans;

c. Workers' Compensation, unemployment insurance, social security, disability benefits insurance; or

d. Travel, savings or vacation plans.

2. Item 16. is deleted in its entirety and replaced by the following:

16. "Suit" means a civil proceeding in which money damages caused by any negligent act, error or omission to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which damages are claimed and to which you must submit or do submit with our consent;

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent; or

c. An appeal of a civil proceeding.

II. FIRE OR EXPLOSION DAMAGE LIMIT

THE FIRE OR EXPLOSION DAMAGE LIMIT FOR ANY ONE FIRE OR EXPLOSION as shown in the Declarations is amended as follows:

A separate limit applies to this coverage, we will pay the lesser of:

A. The Each Occurrence Limit shown in the Declarations; or

B. $500,000.

III. SUPPLEMENTARY PAYMENTS

Under SECTION I - SUPPLEMENTARY PAYMENTS:

A. Paragraph 2. is replaced by the following:

Up to $750 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

B. Paragraph 4. is replaced by the following:

All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $350 a day because of time off from work.

IV. MEDICAL PAYMENTS

THE MEDICAL EXPENSE LIMIT FOR ANY ONE PERSON as stated on the Declarations is amended to a limit of $10,000.

V. WATER DAMAGE LEGAL LIABILITY

The insurance provided under Coverage A (Section I) applies to "property damage" arising out of water damage to premises that are both rented to and occupied by you.

As respects Water Damage Legal Liability:

1. The exclusions, under Coverage A (Section I), other than I and the Nuclear Energy Liability Exclusion are deleted and the following are added:

   A. "Property Damage":

      (1) Assumed in any contract; or

      (2) Loss caused by or resulting from any of the following:

         (a) Wear and tear;

         (b) Rust, corrosion, decay, deterioration, hidden or latent defect;

         (c) Smog;

         (d) Smoke;

         (e) Mechanical breakdown including rupture or bursting caused by centrifugal force;

         (f) Settling, cracking, shrinking or expansion;

         (g) Insects, birds, rodents or animals.

   B. Loss caused directly or indirectly by any of the following:

      (1) Earthquake, volcanic eruption, landslide or any other earth movement;

      (2) Water that backs up from a sewer or drain;

      (3) Water under the ground surface pressing on, or flowing or seeping through:

         (a) foundations, walls, floors or paved surfaces;

         (b) basements;

         (c) doors, windows or other openings.

   C. Loss caused by or resulting from any of the following:

      (1) Water that leaks or flows from plumbing, heating, air conditioning, or fire protection systems caused by or resulting from freezing, unless:

         (a) you make a reasonable effort to maintain heat in the building or structure; or

         (b) you drain the equipment and shut off the water supply if the heat is not maintained.

   D. Loss to or damage to:

      (1) Plumbing, heating, air conditioning, fire protection systems, or other equipment or appliances; or

      (2) The interior of the premises caused by or resulting from rain or snow.

2. LIMITS OF INSURANCE (Section III) applies separately to the insurance provided by this endorsement.

   The most we will pay in any one occurrence is $25,000.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED--DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

SCHEDULE

**Name of Person or Organization:**
UNITED NATIONAL BANK
ATTN: LISA RATLIFF
P.O. BOX 393
CHARLESTON, WV 25322

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

 Copyright, Insurance Services Office, Inc., 1984

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED--DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

SCHEDULE

**Name of Person or Organization:**
WEST VIRGINIA SYMPHONY LEAGUE A DIVISION OF THE
WEST VIRGINIA SYMPHONY
P.O. BOX 11088
CHARLESTON, WV 25339

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

 Copyright, Insurance Services Office, Inc., 1984

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED--DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

**Name of Person or Organization:**
BOBCAT FINANCIAL SERVICES
8001 RIDGEPORT DRIVE
IRVING, TX 75063-3117

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.


Copyright, Insurance Services Office, Inc., 1984

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED--DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

SCHEDULE

**Name of Person or Organization:**
SUNBELT RENTALS
1716 PENNSYLVANIA AVENUE
CHARLESTON, WV 25302

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

 Copyright, Insurance Services Office, Inc., 1984

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to:

**1.** "Bodily injury" to:

**a.** A person arising out of any:

**(1)** Refusal to employ that person;

**(2)** Termination of that person's employment; or

**(3)** Other employment-related practices, policies, acts or ommissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**b.** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(1)**, **(2)** or **(3)** above is directed.

This exclusion applies:

**a.** Whether the insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I - Coverages):

This insurance does not apply to:

**1.** "Personal injury" to:

**a.** A person arising out of any:

**(1)** Refusal to employ that person;

**(2)** Termination of employment; or

**(3)** Other employment-related practices, policies, acts or ommissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**b.** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(1)**, **(2)** or **(3)** above is directed.

This exclusion applies:

**a.** Whether the insured may be liable as an employer or in any other capacity; and

**b.** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION

In consideration of the premium charged, this endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ON PREMISES EXCEPTION TO POLLUTANT EXCLUSION ENDORSEMENT

1. **Sudden and Accidental Exception**

   Exclusions **f.(1)(a)** and **f.(1)(d)(i)** do not apply to "bodily injury" provided:

   a. The "release" of pollutants from which the "bodily injury" arises is "sudden" and "accidental"; and

   b. The injured person's first exposure to such pollutants occurred during the policy period; and

   c. The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by exposure to such pollutants within one (1) year of such first exposure.

2. **Amendment to On Premises Exception**

   The on premises exception to the Pollutant Exclusion, **f.(1)(a)**, is amended. The words "one (1) year" shall be substituted for the words "30 days".

3. **Off Premises Exception**

   Exclusion **f.(1)(d)(i)** does not apply to "bodily injury" that is caused by "gaseous or airborne pollutants" provided:

   a. The injured person's first exposure to "gaseous or airborne pollutants" occurred during the policy period; and

   b. The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by the exposure to "gaseous or airborne pollutants" within one (1) year of such first exposure.

4. **Amended Who Is An Insured**

   As respects paragraphs **1.** and **3.** of this endorsement, the Sudden and Accidental Exception and the Off Premises Exception, SECTION II - WHO IS AN INSURED is deleted in its entirety and replaced by the following:

   The coverage afforded shall apply only to Named Insureds. We shall have no duty to defend or pay damages for any person or organization that is not a Named Insured.

5. **SECTION III - LIMITS OF INSURANCE** applies to coverage provided by this endorsement and is amended as follows:

   a. Item **7.** is added as follows:

      **7.** Subject to the Each Occurrence Limit, the coverage afforded by paragraphs **1.** and **3.** of this endorsement, the Sudden and Accidental Exception and the Off Premises Exception, is subject to a Pollutant Annual Aggregate Limit. The Pollutant Annual Aggregate Limit shall be equal to the Each Occurrence Limit shown in the Declarations. The Pollutant Annual Aggregate Limit is the most we will pay for all damages because of "bodily injury" covered by the Sudden and Accidental Exception and the Off Premises Exception. The Pollutant Annual Aggregate Limit applies separately to each consecutive annual period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

   b. Item **4.** is amended to include the following:

      The Each Occurrence Limit is also subject to Item **7.** Pollutant Annual Aggregate Limit. Interrelated, associated, repeated or continuous "releases" of pollutants during one or more policy periods shall be deemed one "occurrence" and shall be deemed to have occurred on the first day of such first "release".

6. **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS 4.** Other Insurance **b.** Excess Insurance is amended to include the following:

   The insurance provided by paragraphs **1.** and **3.** of this endorsement, the Sudden and Accidental Exception and the Off Premises Exception, is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis, except insurance written specifically to cover as excess

Copyright © 1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

over the limits of insuranc[illegible]at apply in this endorsement.

7. **Additional definitions** - the following definitions apply only to this endorsement:

a. "Accidental" means unintended and unexpected.

b. "Gaseous or airborne pollutants" means pollutants which:

(1) Are a gas, smoke, fume, vapor or other similar airborne substance; and

(2) Are the result of the "release" of such pollutants from materials, machinery or equipment brought on or to the "work site" by any Named Insured or any "employees", contractors or subcontractors working directly or indirectly on any Named Insured's behalf.

"Gaseous or airborne pollutants" does not include asbestos.

c. "Release" [illegible]ans actual discharge, dispersal, seepage, migration, release or escape.

d. "Sudden" means abrupt, immediate and brief as well as unexpected and without prior notice. "Sudden" has a temporal element which requires that the "release" of pollutants begins and ends within a brief period of time. A "release" of a pollutant which results from a series of ongoing events which constitute a course of conduct or course of business is not "sudden".

e. "Work site" means any premises, site or location while a Named Insured or a Named Insured's "employees", contractors or subcontractors are performing operations directly or indirectly on the Named Insured's behalf, provided the premises, site or location is not owned or occupied by or rented or loaned to a Named Insured.

All other terms and conditions remain unchanged.

Copyright © 1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.

THE CINCINNATI INSURANCE COMPANY
P.O. BOX 145496, CINCINNATI, OHIO 45250-5496
A STOCK INSURANCE COMPANY

# EMPLOYERS' LIABILITY COVERAGE PART DECLARATIONS

Attached to POLICY NUMBER: CPP 067 99 36

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

LIMITS OF INSURANCE: $ 1,000,000 Aggregate Limit

| ESTIMATED TOTAL ANNUAL PAYROLL | RATE | ESTIMATED ANNUAL PREMIUM |
|---|---|---|
| 250,000 | .08 | 200 |
| [X] FLAT CHARGE<br>[ ] SUBJECT TO AUDIT | MINIMUM PREMIUM<br>$ 200 | ADVANCE PREMIUM<br>$ 200 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:
GA109WV 11/94

# QUICK REFERENCE
# EMPLOYERS' LIABILITY COVERAGE PART

**READ YOUR POLICY CAREFULLY**


**DECLARATIONS PAGES**
Named Insured and Mailing Address
Policy Period
Description of Business and Location
Coverages and Limits of Insurance

| | Beginning on Page |
|---|---|
| **SECTION I--COVERAGES** | |
| Insuring Agreement | 1 |
| Exclusions | 1 |
| Supplementary Payments | 1 |
| **SECTION II--WHO IS AN INSURED** | 2 |
| **SECTION III--LIMITS OF INSURANCE** | 2 |
| **SECTION IV--EMPLOYERS' LIABILITY CONDITIONS** | |
| Bankruptcy | 2 |
| Duties To Comply With Statutes Or Laws | 2 |
| Duties In The Event Of Occurrence, Claim Or Suit | 2 |
| Legal Action Against Us | 2 |
| Other Insurance | 3 |
| Premium Audit | 3 |
| Representations | 3 |
| Separation Of Insureds | 3 |
| Transfer Of Rights Of Recovery Against Others To Us | 3 |
| **SECTION V--DEFINITIONS** | 3 |
| **NUCLEAR ENERGY LIABILITY EXCLUSION** | 4 |

**COMMON POLICY CONDITIONS**
Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

# WEST VIRGINIA EMPLOYERS' LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II–WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION V--DEFINITIONS.

## SECTION I--COVERAGES

1. **Insuring Agreement.**

   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", including death at any time resulting therefrom, sustained by any employee of the insured arising out of or in the course of his or her employment by the insured. No other obligation to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance applies only to "bodily injury" which occurs during the policy period. The "bodily injury" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory." We will have the right and duty to defend any "suit" seeking those damages. But:

   a. The amount we will pay for damages is limited as described in SECTION III--LIMITS OF INSURANCE;

   b. We may investigate and settle any claim or "suit" at our discretion; and

   c. Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under the above.

2. **Exclusions.**

   This insurance does not apply to:

   a. Any act committed by or at the direction of the insured with a deliberate intent to injure.

   This exclusion does not apply if the insured's legal liability for a tort committed with the deliberate intention to injure is determined by:

   (1) the existence of a specific unsafe working condition in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

   (2) the insured's subjective realization and appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

   (3) the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the insured, which statute, rule regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

   (4) that notwithstanding the existence of the facts set forth in paragraphs (1) through (3) above, the insured nevertheless thereafter exposed an employee to such specific unsafe working conditions intentionally; and

   (5) the employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

   b. Liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

   c. Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

   d. Punitive or exemplary damages.

   e. "Bodily injury", disease or death therefrom of any employee employed in violation of law with the knowledge or acquiescence of the insured.

   f. Any claim brought against the insured by or on behalf of any employee for "bodily injury" or death resulting therefrom with respect to which the insured's defenses have been abrogated by reason of the insured's failure to comply with the provisions of any workers' compensation or occupational disease law.

   g. "Bodily injury" or death resulting therefrom:

   (1) Sustained by any member of the flying crew of an aircraft.

   (2) Sustained by a master or member of the crew of any vessel.

   (3) Sustained by any employee of the insured in the course of an employment subject to the Federal Employers' Liability Act, U.S. Code (1946) Title 34, Section 51-60.

   (4) Sustained by any employee not described in Item 1, Insuring Agreement of this policy.

(5) Sustained by any employee whose payroll has not been included in the total payroll upon which the premium for this policy is based.

h. "Bodily injury by disease" unless prior to 36 months after the end of the policy period written claim is made or suit is brought against the insured for damages because of such injury or death resulting therefrom.

i. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or termination whether or not accompanied by a "bodily injury."

3. **SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim or "suit" we defend:

a. All expenses we incur.

b. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. The cost of appeal bonds required in any such defended "suit." We do not have to furnish these bonds.

c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," other than loss of earnings because of time off from work.

d. All costs taxed against the insured in the "suit."

e. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

f. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II--WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are a sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III--LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits."

2. The Aggregate Limit is the most we will pay for damages covered by this insurance due to or arising out of "bodily injury" regardless of the number of employees sustaining such "bodily injury."

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV--EMPLOYERS' LIABILITY CONDITIONS

1. **Bankruptcy.**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties To Comply With Statutes Or Laws.**

The insured must comply with all provisions of workers' compensation or disease statutes or laws. The insured must contribute to and continue contributing to the respective state compensation, accident or medical fund by declaring to the department, commission or board prescribed by the Workers' Compensation or the Occupational Disease acts or laws of the State of West Virginia, the payroll or other required basis of premium of all employees whose employment is subject to the said act or law.

3. **Duties In The Event Of Occurrence, Claim Or Suit.**

a. You must see to it that we are notified promptly of an "occurrence" which may result in a claim. Notice should include:

(1) How, when and where the "occurrence" took place; and

(2) The names and addresses of any injured persons and witnesses.

b. If a claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit."

c. You and any other insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit;" and

(4) Assist us, upon request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

4. **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

5. **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part our obligations are limited.

If all other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

6. **Premium Audit.**

a. We will compute all premiums for this Coverage Part based upon the payroll earned by employees as reported under the Workers' Compensation Law of the State of West Virginia.

b. Premium shown in this Coverage Part as advance premium is a deposit premium when subject to audit is indicated or a flat premium if flat charge is indicated. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the earned premiums computed exceed the premium previously paid, the insured shall pay the excess premium to us, except that additional premiums less than $50.00 shall be waived; if less, we shall return the difference to the insured subject to the minimum premium as stated in the Declarations.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

7. **Representations.**

By accepting this policy, you agree:

a. The statements in the Employers' Liability Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

8. **Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

9. **Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## SECTION V—DEFINITIONS.

1. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury arises out of the activities of a person whose home is in a territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

3. "Occurrence" means:

a. An injury caused by accident occurring during the policy period; or

b. An injury caused or aggravated by disease, the exposure to conditions of which occurs in the employment of the insured and exclusively within the policy period.

c. Assault and battery shall be deemed an occurrence unless committed by or at the direction of an insured.

4. "Suit" means a civil proceeding in which damages are alleged because of "bodily injury" to which this insurance applies. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Liability Coverage, to "bodily injury" resulting from the "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured;" or

      (3) The "bodily injury" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," unless such facility is located within the United States of America, its territories or possessions or Canada.

2. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means "source material," "special nuclear material" or "by-product material;"

"source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

# THE CINCINNATI INSURANCE COMPANY

A Stock Insurance Company

## BUILDERS' RISK INLAND MARINE COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: CPP 067 99 36 Effective Date: 12-01-1999

Named Insured: IS THE SAME AS IT APPEARS ON THE COMMON POLICY DECLARATION

COVERAGE PROVISIONS

| a. ITEM | COMMERCIAL (C) or DWELLING (D) | LOCATION (address) | "LIMIT" |
|---|---|---|---|
| 1. | (D) | GREENBIER ST., CHARLESTON, WV | 2,000,000 |
| 2. | (D) | McCullough Dr. Beckley, WV | [illegible] 1,041,000 |

| | | |
|---|---|---|
| b. | Covered property in transit | $ 100,000 |
| c. | Covered property at unscheduled storage locations | $ 100,000 |
| d. | All Covered Property in any one occurrence | $ 2,000,000 |

DEDUCTIBLE

For all covered perils unless a different deductible is indicated below or elsewhere in the policy $ 1,000

Theft $ 1,000

MORTGAGE HOLDER

Item 1-1
UNITED NATIONAL BANK
P.O. BOX 393, ATTN: LISA RATLIFF
CHARLESTON, WV 25322

FORMS AND/OR ENDORSEMENTS APPLICABLE TO BUILDERS' RISK INLAND MARINE COVERAGE.

CM0106 11/85 MA112 06/95

Agency PATTERSON, BELL AND CRANE COMPANY 47-019
CHARLESTON, WV

Includes copyrighted material with permission of American Association of Insurance Services.

QUICK REFERENCE

# COMMERCIAL INLAND MARINE COVERAGE PART

READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGE**
Named Insured
Coverages and Limits of Insurance
**COVERAGE FORM**
**A. COVERAGE**
1. Covered Property
a. Buildings and Structures
b. Scaffolding and Construction Forms
2. Property Not Covered
3. Covered Causes of Loss
4. Additional Coverages
a. Transit and Storage Locations
b. Debris Removal
c. Emergency Removal
d. Fire Department Service Charges
e. Pollutant Cleanup and Removal
f. Arson Reward
g. Fire Extinguisher Recharge
h. Trees, Shrubs and Plants
**B. EXCLUSIONS**
- Civil Authority
- Earth Movement
- Flood
- Ground Water
- Nuclear Hazard
- Ordinance or Law
- Penalties
- War
- Contamination
- Criminal Acts
- Freezing
- Loss of Use
- Missing Property
- Pollutants
- Rain, Snow, Ice or Sleet
- Voluntary Parting
- Defects
- Electrical Currents
- Mechanical Breakdown
- Settling, Cracking
- Temperature/Humidity
- Wear and Tear

**C. DEDUCTIBLE**
**D. LOSS CONDITIONS**
**E. OTHER CONDITIONS**
**F. DEFINITIONS**
**COMMON POLICY CONDITIONS**
A. Cancellation
B. Changes
C. Examination of Your Books and Records
D. Inspections and Surveys
E. Premiums
F. Transfer of Your Rights and Duties Under This Policy

Copyright, Insurance Services Office, Inc., 1984

THE CINCINNATI INSURANCE COMPANY
CINCINNATI, OHIO

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WEST VIRGINIA CHANGES--LOSS PAYMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

Commercial Inland Marine Loss Condition **E. LOSS PAYMENT** is replaced by the following:

**E. LOSS PAYMENT**

We will pay or make good any "loss" covered under this Coverage Part within 15 days after:

1. We reach agreement with you and you have performed all conditions set by that agreement;
2. The entry of final judgment; or
3. The filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.


Copyright, Insurance Services Office, Inc., 1984

# BUILDERS' RISK INLAND MARINE COVERAGE FORM

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Builders' Risk Coverage. This coverage is also subject to the "declarations" and additional policy conditions relating to assignment or transfer of rights or duties, cancellation, changes or modifications, inspections, examination of books and records and premiums.

Endorsements and schedules may also apply. They are identified on the "declarations".

Refer to Definitions for words and phrases that have special meaning. These words and phrases are shown in quotation marks.

## A. COVERAGE

### 1. Covered Property

a. **Buildings and Structures** - "We" cover direct physical loss caused by a Covered Cause of Loss to buildings and structures described on the "declarations" while in the course of construction, erection, or fabrication. This includes materials and supplies which will become a permanent part of the buildings or structures, all while located on the premises of the buildings or structures described on the "declarations", or within 1000 feet of such premises. This also includes foundations, excavations, grading and filling.

b. **Scaffolding and Construction Forms** - "We" cover direct physical loss, caused by a Covered Cause of Loss, to scaffolding or construction forms provided the scaffolding or construction forms are located at, or within 1000 feet of, a building or structure described on the "declarations" and used to service the described building or structure.

### 2. Property Not Covered

a. **Aircraft or watercraft** - "We" do not cover aircraft or watercraft.

b. **Automobiles** - "We" do not cover automobiles or any self-propelled vehicles that are designed for highway use.

c. **Contraband** - "We" do not cover contraband or property in the course of illegal transportation or trade.

d. **Existing Buildings or Structures** - "We" do not cover existing buildings or structures to which additions, alterations, improvements, or repairs are being made.

e. **Land** - "We" do not cover land including land on which Covered Property is located.

f. **Money and Securities** - "We" do not cover accounts, bills, currency, food stamps, or other evidences of debt, lottery tickets not held for sale, money, notes, deeds, or securities.

g. **Trees, Shrubs and Plants** - "We" do not cover trees, shrubs, plants, and lawns except as provided in **4. Additional Coverages**.

h. **Waterborne Property** - "We" do not cover property while waterborne except while in transit in the custody of a carrier for hire.

i. **Tools and Equipment** - "We" do not cover tools or equipment other than scaffolding and construction forms.

j. **Plans and Blueprints** - "We" do not cover plans, blueprints, designs or specifications.

### 3. Covered Causes of Loss

"We" cover risks of direct physical loss unless the loss is:

a. Limited by this coverage form; or

b. Caused by a peril that is excluded.

### 4. Additional Coverages

a. **Transit and Storage Locations** - "We" cover direct physical loss caused by a Covered Cause of Loss to materials and supplies which will become a permanent part of buildings or structures described on the "declarations" while they are:

(1) In transit; or

(2) At an unscheduled storage location.

The most "we" pay under this coverage is the "limit" indicated on the "declarations".

b. **Debris Removal** - "We" pay the cost to remove the debris of Covered Property that is caused by a Covered Cause of Loss. This coverage does not include costs to:

(1) Extract "pollutants" from land or water; or

(2) Remove, restore, or replace polluted land or water.

"We" do not pay any more under this coverage than 25 percent of the amount "we" pay for the direct loss. "We" do not pay more for loss to property and debris removal combined than the "limit" for the damaged property.



Includes copyrighted material with permission of

However, "we" pay an additional amount of debris removal expense up to $5,000 when the debris removal expense exceeds 25 percent of the amount "we" pay for direct loss or when the loss to property and debris removal combined exceeds the "limit" for the damaged property.

"We" do not pay any expenses unless they are reported to "us" in writing within 180 days from the date of direct physical loss to Covered Property.

c. **Emergency Removal** - "We" pay for loss to Covered Property while it is moved or being moved to prevent a loss caused by a Covered Cause of Loss. "We" pay for any direct physical loss caused by a peril that is not excluded. This coverage applies for up to 10 days after the property is first moved, but does not extend past the date on which this policy expires.

d. **Fire Department Service Charges** - "We" pay up to $5,000 to cover "your" liability, assumed by contract or agreement prior to the loss, or required by local ordinance, for fire department service charges.

This coverage is limited to charges incurred when the fire department is called to save or protect Covered Property from a Covered Cause of Loss.

No deductible applies.

This is an additional "limit".

e. **Pollutant Cleanup and Removal** - "We" pay "your" expense to extract "pollutants" from land or water at a location described on the "declarations". If the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused by a Covered Cause of Loss that occurs during the policy period. The expenses are paid only if they are reported to "us" in writing within 180 days from the date the Covered Cause of Loss occurs.

"We" do not pay the cost of testing, evaluating, observing, or recording the existence, level or effects of "pollutants". However, "we" pay the cost of testing which is necessary for the extraction of "pollutants" from land or water.

The most "we" pay for each site or location is $10,000 for the sum of all such expenses arising out of a Covered Cause of Loss occurring during each separate 12 month period of this policy.

This is an additional "limit".

f. **Arson Reward** - "We" pay a reward for information which leads to an arson conviction in connection with a fire loss covered under this policy.

The most "we" will pay is $5,000.

This is an additional "limit".

g. **Fire Extinguisher Recharge** - "We" pay expenses incurred to recharge a portable fire extinguisher when it has been used to combat a fire covered under this policy.

The most "we" will pay is $1,000.

This is an additional "limit".

h. **Trees, Shrubs and Plants** - "We" pay for loss to trees, shrubs, plants and lawns caused by:

(1) Fire;
(2) Lightning;
(3) Explosion;
(4) Riot or civil commotion;
(5) Falling aircraft; or
(6) Vandalism.

The most "we" will pay is $5,000 in any one occurrence for each location, but not more than $300 for any one tree, shrub or plant, unless endorsed hereon.

This is an additional "limit".

**B. EXCLUSIONS**

1. "We" do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

a. **Civil Authority** - "We" do not pay for loss caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property.

"We" do pay for loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this coverage.

b. **Earth Movement or Volcanic Eruption** - "We" do not pay for loss caused by an "earth movement" (other than "sinkhole collapse") or caused by eruption, explosion, or effusion of a volcano.

"We" do pay for direct loss by fire, explosion, or "volcanic action" resulting from either "earth movement" or eruption, explosion, or effusion of a volcano.

All volcanic eruptions that occur within a 168 hour period shall be considered a single loss.

This exclusion does not apply to Covered Property while in transit.

Includes copyrighted material with permission of

c. **Flood** - "We" do not pay for loss caused by "flood", but if fire, explosion, or theft results "we" do cover the loss caused by the fire, explosion, or theft.

This exclusion does not apply to Covered Property while in transit.

d. **Ground Water** - "We" do not cover loss caused by "ground water" but if fire, explosion, or theft results "we" do cover the loss caused by the fire, explosion, or theft.

This exclusion does not apply to Covered Property while in transit.

e. **Nuclear Hazard** - "We" do not pay for loss caused by or resulting from a nuclear reaction, nuclear radiation, or radioactive contamination (whether controlled or uncontrolled; whether caused by natural, accidental, or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion, or smoke. "We" do pay for direct loss by fire resulting from the nuclear hazard.

f. **Ordinance or Law** - "We" do not pay for loss or increased cost caused by enforcement of any code, ordinance, or law regulating the use, construction, or repair of any building or structure; or requiring the demolition of any building or structure including the cost of removing its debris.

g. **Penalties** - "We" do not pay for loss caused by penalties for noncompletion or non-compliance with any contract terms or conditions.

h. **War** - "We" do not pay for loss caused by war. This means:

(1) Declared war, undeclared war, civil war, insurrection, rebellion, or revolution;
(2) A warlike act by a military force or by military personnel;
(3) The destruction, seizure, or use of the property for a military purpose; or
(4) The discharge of a nuclear weapon even if it is accidental.

2. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss:

a. **Contamination or Deterioration** - "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault, or weakness in the Covered Property that causes it to damage or destroy itself.

b. **Criminal, Fraudulent or Dishonest Acts** - "We" do not pay for loss caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by;

(1) "You";
(2) Others who have an interest in the property;
(3) Others to whom "you" entrust the property;
(4) "Your" partners, officers, directors, trustees, joint adventurers; or
(5) The employees or agents of (1), (2), (3), or (4) above, whether or not they are at work.

This exclusion does not apply to acts of destruction by "your" employees, but "we" do not pay for theft by employees.

This exclusion does not apply to Covered Property in the custody of a carrier for hire.

c. **Freezing** - "We" do not pay for loss caused by water; other liquids; powder; or molten material that leaks or flows from plumbing, heating, air-conditioning systems, or appliances other than fire protective systems caused by freezing. This does not apply if "you" use reasonable care to maintain heat in the building or structure; or "you" drain the equipment and turn off the supply if the heat is not maintained.

d. **Loss of Use** - "We" do not pay for loss caused by or resulting from loss of use, business interruption, delay, or loss of market.

e. **Missing Property** - "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of Covered Property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the Covered Property. This exclusion does not apply to Covered Property in the custody of a carrier for hire.

f. **Pollutants** - "We" do not pay for loss caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of "pollutants" unless the release, discharge, or escape is caused by a "specified perils". "We" do pay for any resulting loss caused by a "specified peril".

g. **Rain, Snow, Ice, or Sleet** - "We" do not pay for loss caused by or resulting from rain, snow, ice, or sleet to property in the open which is not part of the permanent building or structure. This exclusion does not apply to Covered Property in the custody of carriers for hire.

h. **Voluntary Parting** - "We" do not pay for loss caused by or resulting from voluntary parting with title to or possession of any property because of

Includes copyrighted material with permission of American Association of Insurance Services

any fraudulent scheme, trick, or false pretense.

3. "We" do not pay for loss or damage if one or more of the following exclusions apply to the loss. But if loss by a Covered Cause of Loss results "we" do pay for the resulting loss.

   a. **Defects, Errors, and Omissions** - "We" do not pay for loss caused by an act, defect, error, or omission (negligent or not) relating to:

      (1) Design, specifications, construction, or workmanship;
      (2) Planning, zoning, development, siting, surveying, grading, or compaction; or
      (3) Maintenance, installation, renovation, remodeling, or repair.

   b. **Electrical Currents** - "We" do not pay for loss caused by arcing or by electrical currents other than lightning.

   c. **Mechanical Breakdown** - "We" do not pay for loss caused by mechanical breakdown including centrifugal force.

   d. **Settling, Cracking, Shrinking, Bulging, or Expanding** - "We" do not pay for loss caused by settling, cracking, shrinking, bulging, or expanding of pavements, foundations, walls, ceilings, glass, or roofs.

   e. **Temperature/Humidity** - "We" do not pay for loss caused by dampness, dryness, or changes in or extremes of temperature.

   f. **Wear and Tear** - "We" do not pay for loss caused by wear and tear, marring, or scratching.

## C. DEDUCTIBLE

**Deductible** - "We" pay only that part of "your" loss over the deductible amount indicated on the "declarations" in any one occurrence.

## D. LOSS CONDITIONS

1. **Abandonment** - "You" may not abandon the property to "us" without "our" written consent.

2. **Appraisal** - If "you" and "we" do not agree on the amount of the loss or actual cash value of Covered Property, either party may demand that these amounts be determined by appraisal.

   If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, "you" or "we" can ask a judge of a court of record in the state where the property is located to select an umpire.

   The appraisers will then determine and state separately the amount of each loss.

   The appraisers will also determine the value of Covered Property items at the time of the loss, if requested.

   If the appraisers submit a written report of any agreement to "us", the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss.

   Each appraiser will by paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by "you" and "us".

3. **Notice** - In case of a loss, "you" must:

   a. Give "us" or "our" agent prompt notice including a description of the property involved ("we" may request written notice); and

   b. Give notice to the police when the act that causes the loss is a crime.

4. **Proof of Loss** - "You" must send "us" within 60 days after "our" request, a signed, sworn proof of loss. This must include the following information:

   a. The time, place, and circumstances of the loss;

   b. Other policies of insurance that may cover the loss;

   c. "Your" interest and the interests of all others in the property involved, including all mortgages and liens;

   d. Changes in title of the covered Property during the policy period; and

   e. Estimates, specifications, inventories, and other reasonable information that "we" may require to settle the loss.

5. **Protect Property** - "You" must take all reasonable steps to protect Covered Property at and after an insured loss to avoid further loss. "We" will pay the reasonable costs incurred by "you" for necessary repairs or emergency measures performed solely to protect Covered Property from further damage by a peril insured against if a peril insured against has already casued a loss to Covered Property. "You" must keep an accurate record of such costs. However "we" do not pay for such repairs or emergency measures performed on property which has not been damaged by a peril insured against. This does not increase "our" "limit".

6. **Records** - "You" must produce records, including tax returns and bank microfilms of all cancelled checks, relating to value, loss, and expense and permit copies and

Includes copyrighted material with permission of

extracts to be made of them as often as "we" reasonably request.

7. **Damaged Property** - "You" must exhibit the damaged and undamaged property as often as "we" reasonably request and allow "us" to inspect or take samples of the property.

8. **Examination** - "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

9. **Cooperation** - "You" must cooperate with "us" in performing all acts required by this policy.

10. **Volunteer Payments** - "You" must not, except at "your" own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects to protecting property from further damage.

11. **Loss Payment** -

    a. **Our Options** - "We" have the following options:

    (1) Pay the value of the loss;

    (2) Pay the cost of repairing or replacing the loss;

    (3) Rebuild, repair, or replace with property of equivalent kind and quality, to the extent practicable, within a reasonable time;

    (4) Take all or any part of the damaged property at the agreed or appraised value.

    "We" must give "you" notice of "our" intent to rebuild, repair, or replace within 30 days after receipt of a duly executed proof of loss.

    b. **Insurable Interest** - "We" do not cover more than "your" insurable interest in any property.

    c. **Property of Others** - Losses to property of others may be adjusted with and paid to:

    (1) "You" on behalf of the owner; or

    (2) The owner.

    If "we" pay the owner, "we" do not have to pay "you". "We" may also choose to defend any suits arising from the owners at "our" expense.

    d. **Your Losses** - "We" adjust all losses with "you". Payment will be made to "you" unless another loss payee is named in the policy.

    An insured loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with "you" or the filing of an appraisal award with "us".

    e. **Loss Settlement Terms** - "We" pay the lessor of:

    (1) The amount determined under **13.** Valuation;

    (2) The cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or

    (3) The "limit" that applies to the Covered Property.

12. **Recoveries** - If "we" pay "you" for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

    a. "You" must notify "us" promptly if "you" recover property or receive payment;

    b. "We" must notify "you" promptly if "we" recover property or receive payment;

    c. Any recovery expenses incurred by either are reimbursed first;

    d. "You" may keep the recovered property but "you" must refund to "us" the amount of the claim paid, or any lesser amount to which "we" agree; and

    e. If the claim paid is less than the agreed loss due to a deductible or other limiting "terms" of this policy any recovery will be pro rated between "you" and "us" based on our respective interest in the loss.

13. **Valuation** -

    a. **Replacement Cost** - The value of Covered Property will be based on the replacement cost without any deduction for depreciation.

    The replacement cost is limited to cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount "you" spend to repair or replace the damaged or destroyed property.

    This replacement cost provision does not apply to paragraphs **b.** and **c.** under this loss condition **13.**

    b. **Pair or Set** - The value of a lost or damaged article which is part of a pair or set is based on a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

    c. **Loss to Parts** - The value of a lost or damaged part of an item that consists

Includes copyrighted material with permission of American Association of Insurance Services

of several parts when it is complete is based on the value of only the lost or damaged part or the cost to repair or replace it.

## E. OTHER CONDITIONS

1. **Coinsurance** - "We" only pay a part of the loss if the "limit" is less than 100% of the value of the Covered Property on the date of completion. "Our" part of the loss is determined using the following steps:

   a. Calculate 100% of the value of the Covered Property on the date of completion.

   b. Divide the "limit" for Covered Property by the result determined in **1.a.** above;

   c. Multiply the total amount of loss, before the application of any deductible, by the result determined in **1.b.** above.

   The most "we" pay is the amount determined in **1.c.** above, the amount of the loss, or the "limit" whichever is less. "We" do not pay any remaining part of the loss.

   If there is more than one "limit" indicated on the "declarations" for this coverage part, this procedure applies separately to each "limit".

   If there is only one "limit" indicated on the "declarations" for this coverage, this procedure applies to the total of all Covered Property to which the "limit" applies.

2. **Insurance Under More Than One Coverage** - If more than one coverage of this policy insures the same loss, "we" pay no more than the actual claim, loss, or damage sustained.

3. **Insurance Under More Than One Policy** - "You" may have another policy subject to the same "terms" as this policy. If "you" do, "we" pay "our" share of the covered loss. "Our" share is the proportion that the applicable "limit" under this policy bears to the "limit" of all policies covering on the same basis.

   If there is another policy covering the same loss, other than that described above, "we" pay only for the amount of covered loss in excess of the amount due from that other policy, whether "you" can collect on it or not. But "we" do not pay more than the applicable "limit".

4. **Benefit to Others** - Insurance under this coverage shall not directly or indirectly benefit anyone having custody of "your" property.

5. **Conformity With Statute** - When a condition of this coverage is in conflict with an applicable law, that condition is amended to conform to that law.

6. **Misrepresentation, Concealment, or Fraud** - This coverage is void as to "you" and any other insured if, before or after a loss:

   a. "You" or any other insured have willfully concealed or misrepresented:

      (1) A material fact or circumstance that relates to this insurance or the subject thereof; or

      (2) "Your" interest herein.

   b. There has been fraud or false swearing by "you" or any other insured with regard to a matter that relates to this insurance or the subject thereof.

7. **Policy Period**- "We" pay for a covered loss that occurs during the policy period.

8. **Restoration of Limits** - A loss "we" pay under this coverage does not reduce the applicable "limits".

9. **Subrogation** - If "we" pay for a loss, "we" may require "you" to assign to "us" "your" right of recovery against others. "You" must do all that is necessary to secure "our" rights. "We" do not pay for a loss if "you" impair this right to recover.

   "You" may waive "your" right to recover from others in writing before a loss occurs.

10. **Suit Against Us** - No one may bring a legal action against "us" under this coverage unless:

    a. All of the "terms" of this coverage have been complied with; and

    b. The suit has been brought within two years after "you" first have knowledge of the loss.

    If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by law.

11. **Territorial Limits** - "We" cover property while in the United States of America, its territories and possessions, Canada, and Puerto Rico.

12. **Carriers For Hire** - "You" may accept bills of lading or shipping receipts issued by carriers for hire that limit their liability to less than the replacement cost or actual cash value of the Covered Property.

13. **Occupancy and Use** - This coverage is void, without "our" prior written consent:

    a. 60 days after the building or structure described on the "declarations" is occupied in whole or in part; or

    b. 60 days after the building or structure described on the "declarations" is put to its intended use.

14. **When Coverage Ceases** - Coverage will end when one of the following first occurs:

    a. This policy expires or is cancelled;

    b. The building or structure described on the "declarations" is accepted by the purchaser;

Includes copyrighted material with permission of

c. "Your" interest in the Covered Property ceases;

d. "You" abandon construction with no intent to complete it; or

e. The building or structure described on the "declarations" has been completed for more than 90 days.

15. **Mortgage Holders -**

a. The term "mortgage holder" includes trustee.

b. "We" will pay for covered loss of or damage to buildings or structures to each mortgage holder shown on the "declarations" in their order of precedence, as interests may appear.

c. The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

d. If we deny "your" claim because of "your" acts or because "you" have failed to comply with the terms of this coverage form, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

(1) Pays any premium due under this coverage form at "our" request if "you" have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from "us" of "your" failure to do so; and

(3) Has notified "us" of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this coverage form will then apply directly to the mortgage holder.

e. If "we" pay the mortgage holder for any loss, or damage and deny payment to "you" because of your acts or because "you" have failed to comply with the terms of this coverage form:

(1) The mortgage holder's rights under the mortgage will be transferred to "us" to the extent of the amount "we" pay; and

(2) The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At "our" option, "we" may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to "us" and "you" will pay "your" remaining mortgage debt to "us".

f. If "we" cancel this policy, "we" will give written notice to the mortgage holder at least:

(1) 10 days before the effective date of cancellation if we cancel for "your" nonpayment of premium; or

(2) 30 days before the effective date of cancellation if "we" cancel for any other reason.

g. If "we" do not renew this policy, "we" will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

16. **Provisional Limit -** The "limit" shown on the "declarations" is provisional. The rate and premium are based on an average amount of liability during the period of construction. At any date while this policy is in force, the actual "limit" under this coverage form is that proportion of the Provisional Limit that the replacement cost of the described property bears to the replacement cost at the date of completion, but shall not in any case exceed the Provisional Limit.

17. **Control of Property -** Any act or neglect of any person other than "you" beyond "your" direction or control will not affect this insurance.

The breach of any condition of this coverage form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## F. DEFINITIONS

1. The words "you" and "your" mean the persons or organizations named as the insured on the "declarations".

2. The words "we", "us", and "our" mean the company providing this coverage.

3. "Declarations" means all pages labeled Declarations, Supplemental Declarations, or Schedules, which pertain to this coverage.

4. "Earth movement" means any movement or vibration of the earth's surface (other than "sinkhole collapse") including but not limited to earthquake; landslide; mudflow; mudslide; mine subsidence; or sinking, rising, or shifting of earth.

5. "Flood" means flood, surface water, waves, tidal water, or the overflow of a body of water whether driven by wind or not. This includes spray that results from these whether driven by wind or not.

6. "Ground water" means:

a. Water that backs up through a sewer or drain; or

b. Water below the surface of the ground. This includes water that exerts pressure on or flows, seeps, or


Includes copyrighted material with permission of American Association of Insurance Services

leaks through or into a building, sidewalk, driveway, foundation, swimming pool, or other structure.

7. "Limit" means the amount of coverage that is available, unless the "limit" is amended by E. OTHER CONDITIONS, 16. Provisional Limit.

8. "Pollutant" means:

   a. Any solid, liquid, gaseous, or thermal irritant or contaminant;

   b. Electromagnetic (visible or invisible) or sound emission; or

   c. Waste, including materials to be disposed of as well as recycled, reclaimed, or reconditioned.

9. "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the Covered Property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

10. "Specified perils" means aircraft; civil commotion; explosion; falling objects; fire; hail; leakage from fire extinguishing equipment; lightning; riot; "sinkhole collapse"; smoke; sonic boom; vandalism; vehicles; "volcanic action"; water damage; weight of ice, snow, or sleet; and windstorm.

    Falling objects does not include loss to personal property in the open or to the interior of buildings or structures or personal property inside buildings or structures unless the exterior of the roof or walls are first damaged by a falling object.

    Water damage means the sudden or accidental discharge or leakage of water of steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

11. "Terms" means all provisions, limitations, exclusions, conditions, and definitions that apply.

12. "Volcanic Action" means airborne volcanic blast or airborne shock waves; ash, dust, or particulate matter; or lava flow. It does not include the cost to remove ash, dust, or particulate matter that does not cause direct physical loss to the Covered Property.

# THE CINCINNATI INSURANCE COMPANY

A Stock Insurance Company

## CONTRACTORS' EQUIPMENT COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: CPP 067 99 36 Effective Date: 12-01-1999

Named Insured: IS THE SAME AS IT APPEARS ON THE COMMON POLICY DECLARATION

TYPE OF COVERAGE

☐ Broad ☒ Special

COVERAGE PROVISIONS

| Description (Year Built) Identifying Marks and Numbers | Limit of Insurance |
|---|---|
| 1. 1999 BOBCAT M#773F 509650244 | 20,000 |
| 2. 1989 INGERSOLL-RAND FORKLIFT M#RT708F 0122888 | 12,000 |
| Total | $ 32,000 |

Leased or Rented Property $ 1,000,000

RATES AND PREMIUM

Rate $ INCL Premium $ INCL

DEDUCTIBLE

The Deductible amount is $250 unless otherwise stated $ 1,000

FORMS AND/OR ENDORSEMENTS APPLICABLE TO CONTRACTORS' EQUIPMENT

CM0001 10/91 CM0106 11/85 MA108 02/91 MA411 02/88

SPECIAL PROVISIONS (if any) LOSS PAYEE
BOBCAT FINANCIAL SERVICES
8001 RIDGEPORT DRIVE
IRVING, TX 75063-3117

# QUICK REFERENCE

## COMMERCIAL INLAND MARINE COVERAGE PART

### READ YOUR POLICY CAREFULLY

**DECLARATIONS PAGE**
- Named Insured
- Coverages and Limits of Insurance

**COVERAGE FORMS(S)**

A. COVERAGE
1. Covered Property
2. Property Not Covered
3. Covered Causes of Loss
4. Additional Coverage--Collapse
5. Coverage Extensions (If Applicable)

B. EXCLUSIONS
- Earthquake (If Applicable)
- Governmental Action
- Nuclear Hazard
- War and Military Action
- Water (If Applicable)
- Other Exclusions

C. LIMITS OF INSURANCE

D. DEDUCTIBLE (IF APPLICABLE)

E. ADDITIONAL CONDITIONS

F. DEFINITIONS

**ENDORSEMENTS (IF APPLICABLE)**

**COMMERCIAL INLAND MARINE CONDITIONS**

LOSS CONDITIONS
- A. Abandonment
- B. Appraisal
- C. Duties in the Event of Loss
- D. Insurance Under Two or More Coverages
- E. Loss Payment
- F. Other Insurance
- G. Pair, Sets or Parts
- H. Privilege to Adjust With Owner
- I. Recoveries
- J. Reinstatement of Limit After Loss
- K. Transfer of Rights of Recovery Against Others to Us

GENERAL CONDITIONS
- A. Concealment, Misrepresentation or Fraud
- B. Legal Action Against Us
- C. No Benefit to Bailee
- D. Policy Period
- E. Valuation

COMMON POLICY CONDITIONS
- A. Cancellation
- B. Changes
- C. Examination of Your Books and Records
- D. Inspections and Surveys
- E. Premiums
- F. Transfer of Your Rights and Duties Under this Policy

Copyright, Insurance Services Office, Inc., 1984

# CONTRACTORS' EQUIPMENT SPECIAL COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F–DEFINITIONS.

## A. COVERAGE

We will pay for "loss" to Covered Property from any of the Covered Causes of Loss.

1. **COVERED PROPERTY**, as used in this Coverage Form means:

   a. Your contractors' equipment specifically described in the Declarations.

   b. Similar property of others in your care, custody or control.

2. **PROPERTY NOT COVERED**

   Covered property does not include:

   a. Automobiles, motor trucks, motorcycles, aircraft, or watercraft;

   b. Tents, tarpaulins, plans, blue prints, designs, specifications;

   c. Property used in connection with logging operations or property while located underground or which has become a permanent part of any structure; or

   d. Contraband or property in the course of illegal transportation or trade.

3. **COVERED CAUSES OF LOSS**

   Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" to Covered Property except those causes of "loss" listed in the Exclusions.

## B. EXCLUSIONS

1. We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   a. GOVERNMENTAL ACTION

   Seizure or destruction of property by order of governmental authority.

   But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

   b. NUCLEAR HAZARD

   (1) Any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

   c. WAR AND MILITARY ACTION

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for a "loss" caused by or resulting from any of the following:

   a. Dishonest acts by you, anyone else with an interest in the property, your or their employees or authorized representatives or anyone entrusted with the property whether or not acting alone or in collusion with other persons or occurring during the hours of employment.

   But this exclusion does not apply to a carrier for hire.

   b. The weight of a load exceeding the registered lifting capacity of any machine.

   c. The violation of any commission, state, town, or other similar regulation.

   d. Artificially generated current creating a short circuit or other electric disturbance within an article covered under this Coverage Form.

   But we will pay for direct "loss" caused by resulting fire or explosion, if these causes of "loss" would be covered under this Coverage Form.

   This exclusion only applies to "loss" to that article in which the disturbance occurs.

   e. Property while waterborne.

   f. Unexplained disappearance.

   g. Shortage found upon taking inventory.

3. We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss."

   a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the "loss."

   b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   c. Faulty, inadequate or defective:

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or

      (4) Maintenance;

      of part or all of any property wherever located.

   d. Wear and tear, any quality in the property that causes it to damage or destroy itself, hidden or latent defect, gradual deterioration, depreciation; mechanical breakdown; insects, vermin, rodents; corrosion, rust, dampness, cold or heat.

## C. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## D. DEDUCTIBLE

We will not pay for "loss" in any one occurrence until the amount of the adjusted "loss" before applying the applicable Limits of Insurance exceeds the Deductible shown in the Declarations. We will then pay the amount of the adjusted "loss" in excess of the Deductible, up to the applicable Limit of Insurance.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

1. **COVERAGE TERRITORY**

   We cover property wherever located within:

   a. The United States of America;

   b. Puerto Rico; and

   c. Canada.

2. **COINSURANCE**

   All items that are covered but not individually listed and described must be insured for their actual cash value as of the time of "loss" or you will incur a penalty.

   The penalty is that we will pay only the proportion of any "loss" to these items that the Limit of Insurance shown in the Declarations for them bears to their actual cash value as of the time of "loss."

3. **ADDITIONAL ACQUIRED PROPERTY**

   If during the policy period you acquire additional property of a type already covered by this form, we will cover such property for up to 60 days. The most we will pay in a "loss" is 25% of the total Limit of Insurance shown in the Declarations for that type of property.

   You will report such property within 60 days from the date acquired and will pay any additional premium due. If you do not report such property, coverage will cease automatically 60 days after the date the property is acquired.

## F. DEFINITIONS

"Loss" means accidental loss or damage.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

INLAND MARINE COVERAGE PARTS

**SCHEDULE**

Provisions Applicable

Loss Payable

The following is added to the LOSS PAYMENT Loss Condition, as indicated in the Declarations or by an "X" in the Schedule.

**A.** LOSS PAYABLE

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest. We will:

1. Adjust losses with you; and
2. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

 Copyright, Insurance Services Office, Inc., 1987

# THE CINCINNATI INSURANCE COMPANY

P.O. BOX 145496, CINCINNATI, OHIO 45250-5496

## BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**
Attached to and forming part of POLICY NUMBER: CPP 067 99 36 Effective Date: 12-01-1999

Named Insured: IS THE SAME AS IT APPEARS ON THE COMMON POLICY DECLARATION

**ITEM TWO** **SCHEDULE OF COVERAGES AND COVERED AUTOS**
This coverage part provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos." "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 1 | $ 1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS $ Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS $ Ded. FOR EACH ACCIDENT | |
| AUTO. MEDICAL PAYMENTS | 2 | $ 5,000 | INCL |
| UNINSURED MOTORISTS | 2 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 2 | $ 1,000,000 | INCL |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 2,8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS MINUS $ SEE AA218 Ded. FOR EACH COVERED AUTO, BUT NO DEDUCTIBLE APPLIES TO LOSS CAUSED BY FIRE OR LIGHTNING. See ITEM FOUR FOR HIRED OR BORROWED "autos." | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS MINUS $25 Ded. FOR EACH COVERED AUTO. FOR LOSS CAUSED BY MISCHIEF OR VANDALISM. See ITEM FOUR for hired or borrowed "autos." | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 2,8 | ACTUAL CASH VALUE OR COST OF REPAIR, WHICHEVER IS LESS MINUS $ SEE AA218 Ded FOR EACH COVERED AUTO. See ITEM FOUR for hired or borrowed "autos." | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR (Not Available in California) | | $ for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| AA218 | 01/92 | AA101 | 06/93 | CA0183 | 05/91 | CA0252 | 09/91 |
| CA9968 | 08/98 | PA0235 | 08/95 | AA4010WV | 07/99 | CA0189 | 12/92 |
| CA9944 | 12/90 | AA206 | 12/90 | | | | |

 Copyright, Insurance Services Office, Inc., 1985

# QUICK REFERENCE

## COMMERCIAL AUTO COVERAGE PART
## BUSINESS AUTO COVERAGE FORM

### READ YOUR POLICY CAREFULLY


**DECLARATIONS PAGES**
- Named Insured and Mailing Address
- Policy Period
- Description of Business
- Coverages and Limits of Insurance

**SECTION I--COVERED AUTOS** — Beginning on Page
- Description of Covered Auto Designation Symbols ........ 1
- Owned Autos You Acquire After The Policy Begins ........ 1
- Certain Trailers, Mobile Equipment And Temporary Substitute Autos ........ 1

**SECTION II--LIABILITY COVERAGE**
- Coverage ........ 2
- Who Is An Insured ........ 2
- Coverage Extensions
  - Supplementary Payments ........ 2
  - Out Of State ........ 2
- Exclusions ........ 3
- Limit of Insurance ........ 4

**SECTION III--PHYSICAL DAMAGE COVERAGE**
- Coverage ........ 4
- Exclusions ........ 5
- Limit of Insurance ........ 5
- Deductible ........ 5

**SECTION IV--BUSINESS AUTO CONDITIONS**
- Loss Conditions
  - Appraisal For Physical Damage Loss ........ 5
  - Duties In The Event Of Accident, Claim, Suit or Loss ........ 6
  - Legal Action Against Us ........ 6
  - Loss Payment--Physical Damage Coverages ........ 6
  - Transfer Of Rights Of Recovery Against Others To Us ........ 6
- General Conditions
  - Bankruptcy ........ 6
  - Concealment, Misrepresentation Or Fraud ........ 6
  - Liberalization ........ 6
  - No Benefit To Bailee--Physical Damage Coverages ........ 7
  - Other Insurance ........ 7
  - Premium Audit ........ 7
  - Policy Period, Coverage Territory ........ 7
  - Two Or More Coverage Forms Or Policies Issued By Us ........ 7

**SECTION V--DEFINITIONS** ........ 7

**COMMON POLICY CONDITIONS**
- Cancellation
- Changes
- Examination of Your Books and Records
- Inspections and Surveys
- Premiums
- Transfer of Your Rights and Duties under this Policy

**ENDORSEMENTS (If Any)**

ITEM THREE

CINCINNATI INSURANCE COMPANY
Cincinnati, Ohio 45214

AUTOMOBILE SCHEDULE

AGENCY: PATTERSON, BELL & CRANE COMPANY 47-019
INSURED: HEMINGWAY PLACE LLC STATE: WEST VIRGINIA
ATTACHED TO POLICY NUMBER: CPA0679936 EFFECTIVE: 12-01-1999

LIMITS
BODILY INJURY - 1,000,000
MED PAY - 5,000
PROPERTY DAMAGE - INCLUDED
UM/UIM - 1,000,000:1,000,000
UMPD - INCLUDED

1 1999 JEEP LTD CHEROKEE SER #: 1J4FF7682XL542856 C/N: 27920
CLASS: 7391 COMP: 500 DED COLL: 1000 DED TERR: 02

| BI | PD | MED | COMP | COLL | UM | SRCH | | | | | TOT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 539 | INCL | 23 | 212 | 387 | 102 | 13 | N/A | N/A | N/A | N/A | 1276 |

2 HIRED AND NONOWNED AUTO 0 TO 5 EMPLOYEES

| BI | PD | MED | COMP | COLL | UM | SRCH | | | | | TOT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 32 | INCL | N/A | N/A | N/A | N/A | 1 | N/A | N/A | N/A | N/A | 33 |

2 HIRED CAR PHYSICAL DAMAGE LIMIT (PRIM)25000
COMP: 500 DED COLL: 1000 DED

| BI | PD | MED | COMP | COLL | UM | SRCH | | | | | TOT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| N/A | N/A | N/A | 20 | 30 | N/A | INCL | N/A | N/A | N/A | N/A | 50 |

TOTALS

| | BI | PD | MED | COMP | COLL | UM | SRCH | | | | | TOT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL | 571 | 0 | 23 | 232 | 417 | 102 | 14 | 0 | 0 | 0 | 0 | 1359 |

PS2 PMS NOV 19 1999

WV

932

100

201



ACTIVITY: 11-10-1999
RATEBOOK: 07-01-1999

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION V–DEFINITIONS.

## SECTION I–COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos." The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos."

**A. DESCRIPTION OF COVERED AUTO DESIGNATION SYMBOLS**

SYMBOL DESCRIPTION

1 = ANY "AUTO."

2 = OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

3 = OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

4 = OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

5 = OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

6 = OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

7 = SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to any power unit described in ITEM THREE).

8 = HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households.

9 = NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

**B. OWNED AUTOS YOU ACQUIRE AFTER THE POLICY BEGINS**

1. If symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. CERTAIN TRAILERS, MOBILE EQUIPMENT AND TEMPORARY SUBSTITUTE AUTOS**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto."

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. "Loss;" or

e. Destruction.

## SECTION II—LIABILITY COVERAGE

A. COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos." However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident."

We have the right and duty to defend any "suit" asking for such damages or a "covered pollution cost or expense." However, we have no duty to defend "suits" for "bodily injury" or "property damage" or a "covered pollution cost or expense" not covered by this Coverage Form. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. WHO IS AN INSURED

The following are "insureds:"

a. You for any covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto."

(5) A partner of yours for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. COVERAGE EXTENSIONS

a. Supplementary Payments. In addition to the Limit of Insurance, we will pay for the "insured:"

(1) All expenses we incur.

(2) Up to $250 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $100 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

b. Out of State Coverage Extensions.

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limit or limits specified by a compulsory or financial responsibility

Contains copyrighted material of Insurance Services Office, Inc., with its permission.

law in the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out of state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. EXCLUSIONS**

This insurance does not apply to any of the following:

**1. EXPECTED OR INTENDED INJURY**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured."

**2. CONTRACTUAL**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

**3. WORKERS COMPENSATION**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or any similar law.

**4. EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY**

"Bodily injury" to:

a. An employee of the "insured" arising out of and in the course of employment by the "insured;" or

b. The spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers compensation benefits or to liability assumed by the "insured" under an "insured contract."

**5. FELLOW EMPLOYEE**

"Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

**6. CARE, CUSTODY OR CONTROL**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. HANDLING OF PROPERTY**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured for movement into or onto the covered "auto;" or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured."

**8. MOVEMENT OF PROPERTY BY MECHANICAL DEVICE**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto."

**9. OPERATIONS**

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of "mobile equipment."

**10. COMPLETED OPERATIONS**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs a. or b. above.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. POLLUTION**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants:"

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto;"

(2) Otherwise in the course of transit by or on behalf of the "insured;" or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto;"

b. Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto;" or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured."

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) the "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants;" and

(2) the "bodily injury," "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b and 6.c of the definition of "mobile equipment."

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto;" and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. WAR**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**C. LIMIT OF INSURANCE**

Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury," "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."

## SECTION III--PHYSICAL DAMAGE COVERAGE

**A. COVERAGE**

1. We will pay for "loss" to a covered "auto" or its equipment under:

a. Comprehensive Coverage. From any cause except:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

b. Specified Causes of Loss Coverage. Caused by:

(1) Fire, lightning or explosion;

Contains copyrighted material of Insurance Services Office, Inc., with its permission

(2) Theft;

(3) Windstorm, hail or earthquake;

(4) Flood;

(5) Mischief or vandalism; or

(6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto."

c. Collision Coverage. Caused by:

(1) The covered "auto's" collision with another object; or

(2) The covered "auto's" overturn.

2. Towing.

We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. Glass Breakage--Hitting a Bird or Animal--Falling Objects or Missiles.

If you carry Comprehensive Coverage for the damaged covered "auto," we will pay for the following under Comprehensive Coverage:

a. Glass breakage;

b. "Loss" caused by hitting a bird or animal; and

c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. Coverage Extension. We will also pay up to $15 per day to a maximum of $450 for transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss."

B. EXCLUSIONS

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

a. Nuclear Hazard.

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

b. War or Military Action.

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. Other Exclusions.

a. We will not pay for "loss" to any of the following:

(1) Tape decks or other sound reproducing equipment unless permanently installed in a covered "auto."

(2) Tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

(3) Sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the "auto" manufacturer for the installation of a radio.

(4) Equipment designed or used for the detection or location of radar.

b. We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

(1) Wear and tear, freezing, mechanical or electrical breakdown;

(2) Blowouts, punctures or other road damage to tires.

C. LIMIT OF INSURANCE

The most we will pay for "loss" in any one "accident" is the lesser of:

1. The actual cash value of the damaged or stolen property as of the time of the "loss;" or

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

2. The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

D. DEDUCTIBLE

For each covered "auto," our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV--BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

A. LOSS CONDITIONS

1. **APPRAISAL FOR PHYSICAL DAMAGE LOSS**

If you and we disagree on the amount of "loss," either may demand an appraisal of the "loss." In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

2. **DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS**

a. In the event of "accident," claim, "suit" or "loss," you must give us or our authorized representative prompt notice of the "accident" or "loss." Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit."

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit."

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. **LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Form until:

a. There has been full compliance with all the terms of this Coverage Form; and

b. Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

4. **LOSS PAYMENT--PHYSICAL DAMAGE COVERAGES**

At our option we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

5. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

Contains copyrighted material of Insurance

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

B. GENERAL CONDITIONS

1. BANKRUPTCY

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

2. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured," at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto;" or

d. A claim under this Coverage Form.

3. LIBERALIZATION

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4. NO BENEFIT TO BAILEE--PHYSICAL DAMAGE COVERAGES

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

5. OTHER INSURANCE

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own.

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of paragraph a. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract."

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

6. PREMIUM AUDIT

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico; and

d. Canada.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. TWO OR MORE COVERAGE FORMS OR POLICIES ISSUED BY US

If this Coverage Form and any other Coverage Form or policy issued to you by us

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

or any company affiliated with us apply to the same "accident," the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V--DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."

**B.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads but does not include "mobile equipment."

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** any request, demand or order; or

**2.** any claim or "suit" by or on behalf of a governmental authority demanding

that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants."

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants:"

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto;"

**(2)** Otherwise in the course of transit by or on behalf of the "insured;"

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto;" or

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto;" or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured."

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** the "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants;" and

**(2)** the "bodily injury," "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. or 6.c. of the definition of "mobile equipment."

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto;" and

**(2)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**F.** "Insured contract" means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third

Contains copyrighted material of Insurance

party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your employees, of any "auto." However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your employees to pay for "property damage" to any "auto" rented or leased by you or any of your employees.

An "insured contract" does not include that part of any contract or agreement:

a. that indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

b. that pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased or rented with a driver; or

c. that holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

G. "Loss" means direct and accidental loss or damage.

H. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in paragraphs 1, 2, 3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers.

6. Vehicles not described in paragraphs 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos:"

a. Equipment designed primarily for:

(1) Snow removal;

(2) Road maintenance, but not construction or resurfacing; or

(3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

I. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

J. "Property damage" means damage to or loss of use of tangible property.

K. "Suit" means a civil proceeding in which damages because of "bodily injury, "property damage," or "covered pollution cost or expense," to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages or "covered pollution cost or expense" to which you must submit or submit with our consent.

L. "Trailer" includes semitrailer.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage:"

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means "source material," "special nuclear material" or "byproduct material;"

"source material," "special nuclear material," and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

"waste" means any waste material (a) containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"nuclear facility" means:

(a) Any "nuclear reactor;"

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WEST VIRGINIA CHANGES

For a covered "auto" licensed or principally garaged, or "garage operations" conducted, in West Virginia, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

**A.** The **BUSINESS AUTO** and **TRUCKERS COVERAGE FORMS** are changed as follows:

The EXPECTED OR INTENDED INJURY exclusion is replaced by the following:

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured." However, this exclusion does not apply for amounts up to the limits of liability required by the West Virginia Safety Responsibility Law.

**B.** The **GARAGE COVERAGE FORM** is changed as follows:

The EXPECTED OR INTENDED INJURY exclusion is replaced by the following:

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured." However, this exclusion does not apply:

1. For amounts up to limits of liability required by the West Virginia Safety Responsibility Law.
2. To "bodily injury" resulting from the use of reasonable force to protect persons or property, for "garage operations" other than covered "autos."

 Copyright, Insurance Services Office, Inc., 1990

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WEST VIRGINIA CHANGES--CANCELLATION

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

**A.** The following is added to paragraph 2. of the CANCELLATION Common Policy Condition:

When this policy is in effect less than sixty days and is not a renewal or continuation policy, we may cancel for any reason that is not prohibited by Section 33-6B-3 of the West Virginia Statutes.

The following is added and supercedes any provision to the contrary:

**B. NONRENEWAL**

1. If we decide not to renew or continue this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice at least 45 days before the end of the policy.
2. For policies that have been in effect less than two years, we will have the right not to renew or continue this policy if the reason or reasons for the nonrenewal are not prohibited by the provisions of Section 33-6B-3 of the West Virginia Statutes.
3. If we fail to mail or deliver proper written notice of nonrenewal and you obtain other insurance this policy will end on the effective date of that insurance.
4. Any notice of nonrenewal will be mailed or delivered to your last known address. If notice is mailed, proof of mailing will be sufficient proof of notice.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WEST VIRGINIA AUTO MEDICAL PAYMENTS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Coverage**

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident".

**B. Who Is an Insured**

1. You while "occupying" any "auto".
2. If you are an individual, any "family member" while "occupying" any "auto".
3. You or any "family member" while a pedestrian when struck by any "auto". This includes an "auto" which causes "bodily injury" without hitting an "insured", provided the facts of the "accident" can be proven by sufficient independent corroborative evidence, other than the testimony of the "insured" making a claim under this or similar coverage.
4. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

**C. Exclusions**

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.
2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by you or furnished or available for your regular use.
3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".
4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.
5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.
6. "Bodily injury" caused by declared or undeclared war or insurrection or any of their consequences.
7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.
8. "Bodily Injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such contest or activity.

**D. Limit of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage Endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

 Copyright, Insurance Services Office, Inc., 1998 

**E. Changes In Condtions**

The Conditions are changed for Auto Medical Payments Coverage as follows:

1. The Transfer of Rights of Recovery Against Others To Us Condition does not apply.

2. The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary And Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WEST VIRGINIA CHANGES--CANCELLATION

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

If you are an individual and a covered "auto" you own is of the "private passenger type," the CANCELLATION Common Policy Condition does not apply to that "auto." The following Condition applies instead:

**ENDING THIS POLICY**

**A. Cancellation**

1. You may cancel the policy by mailing or delivering to us advance written notice of cancellation.

2. When this policy is in effect less than 60 days and is not a renewal or continuation policy, we may cancel for any reason that is not prohibited by Section 33-6B-3 of the West Virginia Statutes. Cancellation will be made by mailing or delivering to you, within this period, written notice of cancellation. If we cancel for nonpayment of premium, we will mail or deliver you at least 10 days written notice of cancellation. If we cancel for any other reason, we will mail or deliver you at least 30 days written notice of cancellation.

3. When this policy is in effect 60 days or more or is a renewal or continuation policy, we may cancel only for one or more of the reasons listed below. If we cancel, we will mail or deliver you at least 30 days written notice.

   a. Nonpayment of premium.

   b. Material misrepresentation in obtaining this policy.

   c. The "insured" violates any of this policy's material terms and conditions.

   d. You or any driver who lives with you or customarily uses the covered "auto":

      (1) Has had his or her driver's license suspended or revoked during the policy period. However, this provision does not apply if that operator is under the age of 21 and had his or her license suspended for 60 days because of an alcohol concentration in the blood of two hundredths of one percent or more, by weight, but less than ten hundredths of one percent, by weight.

      (2) Is or becomes subject to epilepsy or heart attacks and cannot produce a physician's certificate testifying to his ability to operate a motor vehicle.

   e. You or any driver who lives with you or customarily uses the covered "auto" is convicted of or forfeits bail during the policy period for any of the following:

      (1) Any felony or assault involving the use of a motor vehicle.

      (2) Negligent homicide arising out of the operation of a motor vehicle.

      (3) Operating a motor vehicle while under the influence of intoxicating liquor or of any narcotic drug.

      (4) Leaving the scene of a motor vehicle "accident" in which that person is involved without reporting as required by law.

      (5) Theft of a motor vehicle or the unlawful taking of a motor vehicle.

      (6) Making false statements in an application for a motor vehicle operator's license.

      (7) A third violation, committed within a period of twelve months, of any moving traffic violation which constitutes a misdemea- nor, whether or not the violations were repetitions of the same offense or were different offenses.

   f. We replace this policy with another one providing similar coverages and the same limits for the covered "auto." The replacement policy will take effect when this policy is cancelled, and will end a year after this policy begins or on this policy's expiration date, whichever is earlier.

   But if this policy has been written for a period of more than a year or without a fixed expiration date, we may cancel only at an anniversary of its original effective date.

4. If this policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not offered a refund.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.


Copyright, Insurance Services Office, Inc., 1986

The following provision is added and supersedes any provision to the contrary:

**B. Non-Renewal**

1. If we decide not to renew or continue this policy we will mail or deliver you written notice at least 45 days before the end of the policy period. If the policy period is other than one year, we will have the right not to renew or continue it only at an anniversary of its original effective date.

2. For policies that have been in effect for two consecutive years or longer, we will have the right not to renew or continue this policy if:

   a. One of the reasons (other than e.(7)) as listed in paragraph 3. of Cancellation exists. However, with respect to paragraph d.(1), we will have the right not to renew or continue this policy if you, or any drivers who live with you or customarily use the covered "auto", have had a suspended or revoked driver's license during the policy period.

   b. You or any other driver who lives with you or customarily uses your covered "auto" is convicted of or forfeits bail during the policy period for a second violation, committed within a period of twelve months, of any moving traffic violation which constitutes a misdemeanor, whether or not the violations were repetitions of the same offense or were different offenses.

   c. You or any other driver has had a second at-fault motor vehicle "accident" within a period of twelve months.

3. For policies that have been in effect for less than two years, we will have the right not to renew or continue this policy for any reason or reasons not prohibited by the provisions of Section 33-6B-3 of the West Virginia Statutes.

4. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

5. If we fail to mail proper notice of non-renewal and you obtain other insurance this policy will end on the effective date of that insurance.

**C. Mailing Of Notices**

We will mail or deliver any notice of cancellation or non-renewal to your last known address. If notice is mailed, proof of mailing will be sufficient proof of notice.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WEST VIRGINIA UNINSURED AND UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or for "garage operations" conducted in, West Virginia, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**MOTOR CARRIER COVERAGE FORM**
**TRUCKERS COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Endorsement effective<br>12-01-1999 | Policy No.<br>CPP 067 99 36 |
| Named Insured<br>HEMINGWAY PLACE LLC | |
| Countersigned by | |

(Authorized Representative)

**SCHEDULE**

| | | |
|---|---|---|
| Uninsured Motorists Coverage | "Bodily Injury" and "Property Damage" | $ REFER TO AA218 Each "Accident" |
| Underinsured Motorists Coverage | "Bodily Injury" and "Property Damage" | $ REFER TO AA218 Each "Accident" |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The definitions of "uninsured motor vehicle" and "underinsured motor vehicle" apply unless an "x" is entered below:

☐ If an "x" is entered in this box, only the definition of "uninsured motor vehicle" applies.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory, damages from the owner or driver of an "uninsured" or "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured" or "underinsured motor vehicle".

2. With respect to damages resulting from an "underinsured motor vehicle", we will pay under this coverage only if **a.** or **b.** below applies:

   **a.** The limits of any applicable liability bonds or policies have been exhausted by judgments or payments; or

   **b.** A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle"; and we

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

(1) Have been gi[illegible] prompt written notice of such tentative settlement; and

(2) Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**B. Who Is an Insured**

1. You.

2. If you are an individual, any "family member".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

4. Any person entitled to recover because of "bodily injury" sustained by an "insured" described in **1.**, **2.** or **3.** above.

**C. Exclusions**

This insurance does not apply to any of the following:

1. Any claim settled without our consent. However, this exclusion does not apply to a settlement made with the insurer of an "underinsured motor vehicle", in accordance with the procedure discussed in Paragraph **A.2.b.**

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. The direct or indirect benefit of any insurer of property.

4. The first $300 of the amount of "property damage" to the property of each "insured" as a result of any one "accident" caused by an "uninsured motor vehicle".

5. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

6. Punitive or exemplary damages.

7. "Bodily injury" or "property damage" sustained by you or any "family member" while "occupying" or struck by any vehicle owned by you or any "family member" that is not a covered "auto".

   a. You while "occupying" or when struck by any vehicle owned by you that is not a covered "auto" under this Coverage Form.

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that [illegible]mily member" that is not a covered "auto" under this Coverage Form.

   c. Any "family member" while "occupying" or when struck by any vehicle owned by you that is insured on a primary basis under any other Coverage Form or policy.

However, with respect to Uninsured Motorists Coverage, this Exclusion **7.** applies only to the extent that the limits of liability of this coverage exceed the statutory minimum amount of Uninsured Motorists coverage.

**D. Limit of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit of Insurance for Uninsured or Underinsured Motorists Coverage shown in the Schedule.

2. In no event will an "insured" be entitled to receive duplicate payment for the same elements of "loss".

**E. Changes in Conditions**

The **Conditions** of the policy are changed for Uninsured and Underinsured Motorists Coverage as follows:

1. The reference in Other Insurance in the Business Auto and Garage Coverage Forms and Other Insurance - Primary and Excess Insurance Provisions in the Truckers and Motor Carrier Coverage Forms to "other collectible insurance" applies only to other collectible uninsured and/or underinsured motorists coverage.

2. **Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

   a. If physically able, promptly notify the police if a hit-and-run driver is involved, unless the "accident" has already been investigated by the police, and

   b. Promptly send us copies of the legal papers if a suit is brought.

A person seeking Underinsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 60 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

Contains copyrighted material of Insurance Services Office, Inc., with its permission.

3. **Transfer of Rights of Recovery Against Others to Us** is changed by adding the following:

   We shall be entitled to recovery only after the "insured" has been fully compensated for damages.

   Our rights do not apply under this provision with respect to Underinsured Motorists Coverage if we:

   a. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

   b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 60 days after receipt of notification.

   If we advance payment to the "insured" in an amount equal to the tentative settlement within 60 days after receipt of notification:

   a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

   b. We also have a right to recover the advanced payment.

      We do not have a right of recovery against anyone who has a liability bond or policy which is in whole or part uncollectible because the insuring or bonding company is or becomes insolvent or has been placed in receivership.

4. The Two or More Coverage Forms or Policies Issued by Us Condition does not apply to Uninsured and Underinsured Motorists coverage.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means injury or destruction of:

   a. A covered "auto", or

   b. Property contained in the covered "auto", or

   c. Any other property (except an "auto") owned by an "insured" and located in West Virginia.

4. "Uninsured motor vehicle" means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the West Virginia Motor Vehicle Safety Responsibility Law, or

   b. For which an insuring or bonding company legally denies coverage or its bond or policy is in whole or part uncollectible because the company is or becomes insolvent or has been placed in receivership, or

   c. Which is a hit-and-run vehicle and neither the driver nor owner is identifiable. The vehicle must hit an "insured", an "insured's" property, a covered "auto" or a vehicle an "insured" is "occupying" and caused "bodily injury" to the "insured" or "property damage".

   However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by the motor vehicle law;

   b. Owned by a governmental unit or agency; or

   c. Designed for use mainly off public roads while not on public roads.

5. "Underinsured motor vehicle" means a land motor vehicle or trailer to which a liability bond or policy applies at the time of the "accident" but the amount paid for "bodily injury" or "property damage" to an "insured" under that bond or policy is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

   However, "underinsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law.

   b. Owned by a governmental unit or agency; or

   c. Designed for use mainly off public roads while not on public roads.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998

THIS ENDORSEMENT C[illegible]NGES THE POLICY. PLEASE [illegible]AD IT CAREFULLY.

# WEST VIRGINIA CHANGES - COVERAGE EXTENSION FOR TEMPORARY SUBSTITUTE AUTOS

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in West Virginia, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| Endorsement effective 12-01-1999 | Policy No. CPP 067 99 36 |
|---|---|
| Named Insured HEMINGWAY PLACE LLC | |
| Countersigned by | |

(Authorized Representative)

**SCHEDULE OF COVERAGES**

Enter an "X" in one or more of the following check-boxes if at least one "auto" is provided that coverage under the Coverage Form. However, if **Comprehensive Physical Damage Coverage** and **Specified Causes Of Loss Coverage** are provided separately by the Coverage Form on at least one covered "auto", then enter an "X" in the check-box that provides **Comprehensive Physical Damage Coverage.**

**COVERAGE**

[X] If an "X" is entered in this check-box, this endorsement provides **Liability Coverage** for a "temporary substitute auto".

[X] If an "X" is entered in this check-box, this endorsement provides **Comprehensive Physical Damage Coverage** for a "temporary substitute auto".

[X] If an "X" is entered in this check-box, this endorsement provides **Collision Physical Damage Coverage** for a "temporary substitute auto".

[ ] If an "X" is entered in this check-box, this endorsement provides **Specified Causes of Loss Coverage** for a "temporary substitute auto".

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. COVERAGE**

Any "temporary substitute auto" that is loaned to the named insured will be considered a covered "auto" only for those coverages where an "x" is entered in the check-box in the Schedule of Coverages. However, if **Comprehensive Physical Damage Coverage** and **Specified Causes Of Loss Coverage** are provided separately by the Coverage Form on at least one covered "auto", then any "temporary substitute auto" will be considered a covered "auto" for **Comprehensive Physical Damage Coverage.**

**B. CHANGES IN EXCLUSIONS**

The **CARE, CUSTODY OR CONTROL** Exclusion does not apply to a "temporary substitute auto". However, this exclusion does apply to contents in a "temporary substitute auto".

**C. LIMIT OF INSURANCE**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for each coverage designated in the Schedule of Coverages is the Limit of In-

 Copyright, Insurance Services Office, Inc., 1992 

surance for that coverage shown in the Declarations.

If both **Liability** and **Physical Damage coverage** are provided by this Coverage Form, any amount payable for damage to a "temporary substitute auto" under this Coverage Form's **Liability Coverage** shall be reduced by all sums paid for the same damages under this Coverage Form's **Physical Damage coverage.**

No one will be entitled to receive duplicate payments for the same elements of "loss".

**D. CHANGES IN CONDITIONS**

OTHER INSURANCE is changed by adding the following:

When this Coverage Form and any other Coverage Form or policy apply and:

1. One provides coverage to an "insured" engaged in the business of selling, leasing, repairing, or servicing "autos"; and
2. The other provides coverage to a person not engaged in that business; and
3. At the time of an "accident" a person covered by a Coverage Form described in paragraph **D.2.** is operating an auto provided by the business covered by a Coverage Form described in paragraph **D.1.** as a "temporary substitute auto",

then the Coverage Form issued to a business described in **D.1.** is excess over any coverage available to the person described in paragraph **D.2.**

**E.** The following is added to the DEFINITIONS Section:

"Temporary substitute auto" means any "auto" you do not own while used with the permission of its owner, who is engaged in the business of selling, leasing, repairing or servicing "autos" while such "auto" is used as a temporary replacement for a covered "auto" you own that is out of use because of its:

a. Breakdown,
b. Repair, or
c. Servicing.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**
**TRUCKERS COVERAGE FORM**
**BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM**

**A.** We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto."

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

**D.** If we make any payment to the loss payee, we will obtain his or her rights against any other party.

#1
CITY NATIONAL BANK
ATTN: LARRY O'DELL
3601 MACCORKLE AVENUE S.E.
CHARLESTON, WV 25301

 Copyright, Insurance Services Office, Inc., 1990

# SUPPLEMENTARY SC DULE FOR BUSINESS AUTO--ITEMS FO , FIVE, AND SIX

Attached to and forming a part of:
Form AA 801 (Business Auto Coverage Part)

CPP 067 99 36

NUMBER

## ITEM FOUR SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS.

LIABILITY COVERAGE--RATING BASIS, COST OF HIRE

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | PREMIUM |
|---|---|---|---|
| | | | INCL |
| | | TOTAL PREMIUM | INCL |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

PHYSICAL DAMAGE COVERAGE

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | MINIMUM PREMIUM | PREMIUM |
|---|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIRS OR $ 25,000 WHICHEVER IS LESS MINUS $ 500 DED. FOR EACH COVERED AUTO, FOR ALL LOSS EXCEPT FIRE OR LIGHTNING | | | | INCL |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE, COST OF REPAIRS OR $ WHICHEVER IS LESS MINUS $25 DED. FOR EACH COVERED AUTO, FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | | | | |
| COLLISION | ACTUAL CASH VALUE, COST OF REPAIRS OR $ 25,000 WHICHEVER IS LESS MINUS $ 1,000 DED. FOR EACH COVERED AUTO | | | | INCL |
| | | | TOTAL PREMIUM | INCL | |

## ITEM FIVE SCHEDULE FOR NONOWNERSHIP LIABILITY

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | | |
| | Number of Partners | | |
| Social Service Agency | Number of Employees | | |
| | Number of Volunteers | | |
| | | TOTAL PREMIUM | |

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, 1985

ITEM SIX SCHEDULE FOR GROSS R IPTS OR MILEAGE BASIS--LIABILITY COVE E--PUBLIC AUTO OR LEASING RENTAL CONCERNS

| Estimated Yearly | RATES | | PREMIUMS | |
|---|---|---|---|---|
| | ☐ Per $100 of Gross Receipts<br>☐ Per Mile | | | |
| ☐ Gross Receipts<br>☐ Mileage | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS | LIABILITY COVERAGE | AUTO MEDICAL PAYMENTS |
| | | | | |
| | TOTAL PREMIUMS | | | |
| | MINIMUM PREMIUMS | | | |

When used as a premium basis:

FOR PUBLIC AUTOS

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation. Gross Receipts does not include:

A. Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.
B. Advertising Revenue.
C. Taxes which you collect as a separate item and remit directly to a governmental division.
D. C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

FOR RENTAL OR LEASING CONCERNS

Gross receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the autos you leased or rented to others during the policy period.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.

PATTERSON BELL AND CRANE COMPANY
1012 KANAWHA BOULEVARD EAST
P O BOX 2551
CHARLESTON WV 25329

47019

Dear Agent:

Our Commercial Lines Team has taken considerable care to process this policy correctly. We think you will be pleased with its neatness and accuracy. HOWEVER, IF THE POLICY HAS NOT BEEN PRODUCED TO YOUR SATISFACTION PLEASE INDICATE THE PROBLEMS AND RETURN IT DIRECTLY TO MY ATTENTION VIA FAX (513) 870-2960. I will see that the corrected policy is processed on a priority basis.

Thank you for placing this coverage with The Cincinnati Insurance Companies!

Best Regards,

Thomas A. Joseph
Senior Vice President
Commercial Lines

Policy Number: CPP 067 99 36
Effective Date: 12-01-1999

Named Insured: HEMINGWAY PLACE LLC

Underwriter SEAN HOLLOWAY
Rater DIANE MORGAN
Typist SUSAN CAMPBELL

| PREMIUM | COMMISSION |
|---|---|
| 13,556 ANNUAL | 20% |
| 136 ANNUAL | 0% WV SURCHARGE |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of Policy No. CPP 067 99 36

Issued to HEMINGWAY PLACE, LLC

Effective Date of Endorsement 11-13-2000 Agent CARSON INSURANCE AGENCY INC 47-025

CHARLESTON, WV

| | Additional Premium | Return Premium |
|---|---|---|
| Due at Endorsement Effective Date | 76 FLAT<br>1 FLAT WV 1% S/C | |

Subsequent ☐ Annual ☐ Semi ☒ Quarterly Installments ☐ Increased by ☐ Decreased by $______

Revised Install. Payment, Not Including Auto Premiums $ ______

It is agreed that the policy is amended as indicated by ☒

Policy Premium Amended to: ☐ Annual ☐ Semi-Annual ☐ Quarterly Installments

☐ Named Insured amended to:

☐ Mailing Address ☐ Described Premises

☐ Items added as specified below:

☐ Items deleted as specified below:

☐ Mortgagee & Address ☐ Loss Payee & Address ☐ Additional Insured-Name of Person or Organization & Address & Coverage Form applying.

AMENDING BUILDERS RISK FORM MA512 TO INCLUDE:
2.(D) MCCULLOUGH DRIVE, BECKLEY, WV 1,041,000.

AMENDING (D) ALL COVERED PROPERTY IN ANY ONE OCCURRENCE TO 3,041,000.

ADDING THE FOLLOWING AS MORTGAGEE:
WV HOUSING DEVELOPMENT FUND
814 VIRGINIA STREET EAST
CHARLESTON, WV 25301

01-23-2001 SN8

CINCINNATI INSURANCE COMPANY
W. VIRGINIA

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

GENERAL CHANGE ENDORSEMENT

ttached to and forming part of Policy No. CPP0679936
ssued to HEMINGWAY PLACE LLC
ffective Date of Endorsement 11-13-2000

gency PATTERSON, BELL & CRANE COMPANY 47-019

dditional Premium Due at Endorsement Effective Date NONE

MENDING NAMED INSURED TO READ:
HEMINGWAY PLACE LLC, CRANBERRY COVE LIMITED PARTNERSHIP

VSI PMS DEC 1 8 2000

MH 12-01-2000

A 407 01 95 ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

CINCINNATI INSURANCE COMPANY
W. VIRGINIA

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

GENERAL CHANGE ENDORSEMENT

ttached to and forming part of Policy No. CPP0679936
ssued to HEMINGWAY PLACE LLC
ffective Date of Endorsement 11-06-2000

gency PATTERSON, BELL & CRANE COMPANY 47-019

dditional Premium Due at Endorsement Effective Date NONE

DDING ADDITIONAL INSURED FORM GA4085 ATTACHED.

DDING AS LOSS PAYEE PER LOSS PAYABLE FORM MA411 ATTACHED:
STATE EQUIPMENT INC.
P.O. BOX 3939, CHARLESTON, WV 25339

VS PMS DEC 1 8 2000

MH 12-01-2000

A 407 01 95 ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

This endorsment modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Name of Person or Oganization:**

STATE EQUIPMENT, INC.
ATTN: KIM
P.O. BOX 3939
CHARLESTON, WV 25339

**WHO IS AN INSURED** (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:

1. To any "occurrence" which takes place after the equipment lease expires;
2. To "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the sole negligence or willful misconduct of the person or organization shown in the Schedule or of that person's or organization's "employees".

Contains copyrighted material of Insurance Services Office, Inc., with its permission.

CINCINNATI INSURANCE COMPANY
Cincinnati, Ohio 45214

AUTOMOBILE CHANGE ENDORSEMENT

AGENCY: Carson Insurance Agency 47-025
INSURED: HEMINGWAY PLACE LLC STATE: WEST VIRGINIA
ATTACHED TO POLICY NUMBER: CPP0679936 EFFECTIVE: 05-24-2000
INCEPTION: 12-01-1999

COVERAGE LIMITS OF LIABILITY ARE NOT CHANGED BY THIS ENDORSEMENT.
IT IS AGREED THAT THE FLEET SCHEDULE ATTACHED TO THE ABOVE NOTED POLICY IS AMENDED AS FOLLOWS:

THE FOLLOWING VEHICLE(S) ARE HEREBY ADDED TO THIS POLICY (ANNUAL PREM)

2000 INTERNATIONAL TRL SER #: 1ZSCS1628YB000847 C/N: 2625
CLASS: 69199 COMP: 500 DED COLL: 1000 DED TERR: 02

| BI | PD | MED | COMP | COLL | UM | SRCH | | | | | TOT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| INCL | INCL | N/A | 6 | 16 | INCL | 1 | N/A | N/A | N/A | N/A | 23 |

NET ADDITIONAL PREMIUM

| BI | PD | MED | COMP | COLL | UM | SRCH | | | | | TOT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 0 | 0 | 3 | 8 | 0 | 1 | 0 | 0 | 0 | 0 | 12 |

ADDITIONAL PREMIUM DUE NOW: WAIVED Flat

CASH ENDORSEMENT

#01

chg to Praise ...

RECEIVED
JUN 0 8 2000 MV
DATA ENTRY

DHK PMS JUN 2 3 2000

REC'D CLD - CENTRAL
MAY 3 0 2000
PULL ATTACH
ACT CODE
PERSON CODE 15R

A-407 (ED.- 5/88)A AGENT

ACTIVITY: 05-24-2000
RATEBOOK: 03-01-2000

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# GENERAL CHANGE ENDORSEMENT

Attached to and forming part of Policy No. CPP 067 99 36

Issued to HEMINGWAY PLACE LLC

Effective Date of Endorsement 12-01-1999 Agent PATTERSON, BELL AND CRANE COMPANY 47-019
CHARLESTON, WV

| | Additional Premium | Return Premium |
|---|---|---|
| Due at Endorsement Effective Date | 7 WV 1% S/C FLAT<br>703 FLAT | |

Subsequent ☐ Annual ☐ Semi ☐ Quarterly Installments ☐ Increased by ☐ Decreased by $______

Revised Install. Payment, Not Including Auto Premiums $ ______

It is agreed that the policy is amended as indicated by ☒

Policy Premium Amended to: ☐ Annual ☐ Semi-Annual ☐ Quarterly Installments

☐ Named Insured amended to:

☐ Mailing Address ☐ Described Premises

MAR 27 2000

DATA ENTRY

☐ Items added as specified below:

☐ Items deleted as specified below:

☐ Mortgagee & Address ☐ Loss Payee & Address ☐ Additional Insured-Name of Person or Organization & Address & Coverage Form applying.

AMENDING COMMERCIAL GENERAL LIABILITY FORM GA501 TO INCLUDE:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CONTRACTORS-EXECUTIVE -3 | 91580 | B) | 15,600 | | 34.368 | | 536 |
| INCL PROD AND/OR COMP OP | | | | | | | |
| PLUMBING-RESIDENTIAL/-4 | 98483 | B) | 4,460 | 16.630 | 20.942 | 74 | 93 |
| DOMESTIC | | | | | | | |

CASH ENDORSEMENT

CPB PMS APR - 5 2000

03-23-2000 LG3

CINCINNATI INSURANCE COMPANY
W. VIRGINIA

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

GENERAL CHANGE ENDORSEMENT

Attached to and forming part of Policy No. CPP0679936
Issued to HEMINGWAY PLACE LLC
Effective Date of Endorsement 12/01/1999

Agency Patterson Bell & Crane Co 47-019

Additional Premium Due at Endorsement Effective Date REFER TO IA-102

IT IS UNDERSTOOD AND AGREED THAT PAYMENT IS AMENDED TO QUARTERLY PAYMENT.

FIRST INSTALLMENT $3,428

REMAINING INSTALLMENT $3,428

ALL OTHER POLICY CONDITIONS REMAIN THE SAME

MBX PMS FEB 08 2000

RECEIVED
FEB 01 2000 CW
DATA ENTRY

01-CPA
MBX PMS FEB 09 2000

CINCINNATI INSURANCE COMPANY
W. VIRGINIA

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

GENERAL CHANGE ENDORSEMENT

Attached to and forming part of Policy No. CPP0679936
Issued to. HEMINGWAY PLACE LLC
Effective Date of Endorsement 12/01/1999

Agency Patterson Bell & Crane Co 47-019

Additional Premium Due at Endorsement Effective Date NONE

IT IS UNDERSTOOD AND AGREED THAT SUNBELT RENTALS, 1716 PENNSYLVANIA AVENUE, CHARLESTON WV 25302 IS ADDED AS LOSS PAYEE AS RESPECTS TO EQUIPMENT LEASED TO THE INSURED.

 ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

CINCINNATI INSURANCE COMPANY
W. VIRGINIA

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

GENERAL CHANGE ENDORSEMENT

Attached to and forming part of Policy No. CPP0679936
Issued tq HEMINGWAY PLACE LLC
Effective Date of Endorsement 12-01-1999

Agency Patterson Bell & Crane Co 47-019

Additional Premium Due at Endorsement Effective Date REFER TO IA-408

IT IS UNDERSTOOD AND AGREED THAT WV SYMPHONY IS DELETED AS AN ADDITIONAL INSURED

 ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

CINCINNATI INSURANCE COMPANY
W. VIRGINIA

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

GENERAL CHANGE ENDORSEMENT

ttached to and forming part of Policy No. CPP0679936
ssued to HEMINGWAY PLACE LLC
ffective Date of Endorsement 10/20/1999

gency Patterson Bell & Crane Co 47-019

dditional Premium Due at Endorsement Effective Date NONE

CPS PMS OCT 3 4 1999

T IS UNDERSTOOD AND AGREED THAT TITAN RENTALS/NATIONS RENTS IS
ELETED AS LOSS PAYEE/ADDITIONAL INSURED
ND
JNBELT RENTALS 1716 PENNSYLVANIA AVENUE, CHARLESTON WV 25302 IS
DDED AS LOSS PAYEE/ADDITIONAL INSURED AS RESPECTS TO EQUIPMENT
EASED OR RENTED TO THE INSURED.

 ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

# THE CINCINNATI INSURANCE COMPANY

P.O. BOX 145496, CINCINNATI, OHIO 45250-5496
(513) 870-2000

## COMMERCIAL UMBRELLA LIABILITY POLICY DECLARATIONS

RENEWAL OF CCC 445 08 24 ✓

| Item | DECLARATIONS | POLICY NUMBER CCC 445 08 24 |
|---|---|---|
| 1. | HEMINGWAY PLACE LLC<br>C/O HARBINGER DEVELOPMENT<br>1591 E. WASHINGTON ST.<br>SUITE 200<br>CHARLESTON, WV 25311 | NAMED INSURED<br>ADDRESS |
| 2. | From: 12-01-1999 To: 12-01-2000 ✓ Policy Period | 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN |
| | PATTERSON, BELL AND CRANE COMPANY 47-019<br>CHARLESTON, WV | AGENCY |
| 3. | LIMITS OF INSURANCE<br>$ 4 ,000,000 Each Occurrence Limit $ 4 ,000,000 Aggregate Limit | |
| 4. | PREMIUM is payable ☐ Annually ☐ Semi-annually ☒ Quarterly as follows<br>Advance Premium $ REFER TO (includes installment charge $ _____)<br>Each Subsequent Installment $ US404 (includes installment charge $ _____)<br>Applicable to Premium, if box is checked:<br>☐ Subject to Annual Adjustment<br>☐ Subject to Audit (see Endorsement for Rating Basis) | |
| 5. | Form Numbers of the Policy and Endorsements forming a part of the policy at issue:<br>US511 05/90 US101P 04/99 US419WV 01/96 US324 11/96<br>US302 01/98 US315 01/96 US404 11/98 | |

### SCHEDULE A--SCHEDULE OF UNDERLYING POLICIES

| | Insurer, Policy Number & Period | Type of Policy | | Applicable Limits |
|---|---|---|---|---|
| (a) | | Employer's Liability | | Employer's Liability |
| | | | $ | Bodily Injury By Accident Each Accident |
| | | | | Bodily Injury By Disease Each Employee |
| | | | $ | Bodily Injury By Disease Policy Limit |
| (b) | CINCINNATI INS. CO.<br>CPP 067 99 36<br>12-01-1999 TO 2000 | Commercial General Liability including | $ 1,000,000 | Bodily Injury and Property Damage Liability each occurrence limit |
| | | ☒ products-completed operations coverage | $ NONE | general aggregate limit (other than products-completed operations) |
| | | | $ 2,000,000 | products-completed operations aggregate limit |
| | | | $ 1,000,000 | Personal Injury and Advertising Injury Limit |
| (c) | SAME AS (b) | Automobile Liability including | $ | Bodily Injury Liability each person |
| | | ☒ owned automobiles | $ | each occurrence |
| | | ☒ non-owned automobiles | | Property Damage Liability |
| | | ☒ hired automobiles | $ | each occurrence |
| | | | $ 1,000,000 | Bodily Injury Liability and/or Property Damage Liability or Both Combined each occurrence |

CB PMS NOV 3 1 1999

MOD

REC'D JR DEC 0 1 1999

DATA ENTRY

This is a true & certified copy of policy.

Christopher Kendall, Vice President

RETURN THIS DECLARATION TO COMPANY IF CANCELLED

Countersigned by ________________
Authorized Represe

11-29-1999 KM9

NAMED INSURED: HEMINGWAY PLACE LLC
EFFECTIVE DATE 12-01-1999

ADDITIONAL SCHEDULE A--SCHEDULE OF UNDERLYING POLICIES Issued to Form a Part of Policy No. CCC 445 08 24

| Carrier, Policy Number & Period | Type of Policy | Applicable Limits |
|---|---|---|
| (d) CINCINNATI INS. CO. CPP 067 99 36 12-01-1999 TO 2000 | WV EMPLOYER'S LIABILITY | 1,000,000 AGGREGATE |

# COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under Who is an Insured (Section II).

Other words and phrases that appear in quotation marks have special meaning. Refer to Definitions (Section V).

In return for the payment of premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

**SECTION I - COVERAGES**

**A. Insuring Agreement**

We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages in excess of the "underlying insurance" or for an "occurrence" covered by this policy which is either excluded or not covered by "underlying insurance" because of:

1. "Bodily injury" or "property damage" covered by this policy occurring during the policy period and caused by an "occurrence"; or
2. "Personal injury" or "advertising injury" covered by this policy committed during the policy period and caused by an "occurrence".

This coverage applies anywhere.

The amount we will pay is limited as described in Limits of Insurance (Section III).

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Defense and Supplementary Payments.

**B. Exclusions**

This policy does not apply to:

1. **Asbestos**

   Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

2. **Breach of Contract, Failure to Perform, Wrong Description**

   "Advertising injury" arising out of:

   a. Breach of contract, other than misappropriation of advertising ideas under an implied contract;

   b. The failure of goods, products or services to conform with advertised quality or performance; or

   c. The wrong description of the price of goods, products or services.

3. **Damage to Impaired Property or Property Not Physically Injured**

   "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

   a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

**9. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured even if the injury or damage is of a different degree or type than actually intended or expected.

This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**10. Falsity, Prior Publication, Willful Violation**

"Advertising injury" or "personal injury" arising out of:

a. Oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity;

b. Oral or written publication of material whose first publication took place before the beginning of the policy period; or

c. The willful violation of a penal statute or ordinance committed by or with the consent of the insured.

**11. Laws**

Any liability or obligation of the insured under any of the following laws:

a. Any workers' compensation, unemployment compensation, disability benefits or similar law, however, this exclusion does not apply to liability of others assumed by you under any valid contract in existence at the time of "occurrence", or

b. Any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

**12. Non-Owned Auto Limitation**

Any liability of the owner or anyone else, except "executive officers" and owners of insured organizations, arising out of the ownership, maintenance or use of any "auto" which you do not own, unless such coverage is provided by a valid and collectible policy listed in the Schedule of Underlying Policies, and then only for such hazards for which coverage is provided by such "underlying insurance".

**13. Pollutant**

a. Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(1) That are, or that are contained in any property that is:

(a) Being transported or towed by, handled, or handled for movement into, onto or from, the "auto";

(b) Otherwise in the course of transit by or on behalf of the insured; or

(c) Being stored, disposed of, treated or processed in or upon the "auto";

(2) Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the insured for movement into or onto the "auto"; or

(3) After the pollutants or any property in which the pollutants are contained are moved from the "auto" to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph (1) above does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the "auto" or its parts, if the pollutants escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc., 1992

a. "Your product";

b. "Your work"; or

c. "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**15. War**

"Bodily injury" or "property damage" due to war, whether or not declared or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

This exclusion applies only to liability assumed under a contract or agreement. This exclusion does not apply with respect to "occurrences" taking place in the United States of America, its territories or possessions, or Canada.

**C. Defense and Supplementary Payments**

1. We have the right and duty to defend any claim or "suit" against the insured for damages covered by this policy, even if the allegations are groundless, false, or fraudulent, when:

   a. The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

   b. Damages are sought for "bodily injury", "property damage", "personal injury" or "advertising injury" which are not covered by "underlying insurance" or other insurance.

2. When we have the duty to defend we will pay all expenses we incur in addition to the applicable limits of insurance.

   Our right and duty to defend ends when the applicable limits of insurance as stated in the Declarations has been exhausted by payment of claims.

3. We have no duty to investigate, settle or defend any claim or "suit" other than those circumstances described in Paragraph C.1. However, we do have the right to participate in the investigation, settlement or defense of any claim or "suit" for which coverage may be afforded by this policy. If we exercise this right, we will do so at our expense.

4. If there is no underlying insurer obligated to do so we will pay the following when we provide a defense:

   a. All expenses we incur.

   b. The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

   c. The cost of bonds to appeal a judgment or award in any claim or "suit" we defend and the cost of bonds to release attachments, but only for bond amounts within the applicable limits of insurance. We do not have to furnish these bonds.

   d. Reasonable expenses incurred by the insured at our request to assist us in the investigation of defense of the claim or "suit", including the actual loss of earnings.

   e. All costs taxed against the insured in the "suit".

   These payments will not reduce the limits of insurance.

5. If there is no underlying insurer obligated to do so we will pay the following for an "occurrence" to which this insurance applies even if we have no duty to provide a defense:

   a. Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay. If we make an offer to pay the applicable limits of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a. Insureds;
   b. Claims made or "suits" brought; or
   c. Persons or organizations making claims or bringing "suits".
2. The Aggregate Limit is the most we will pay for all damages:
   a. Included in the "products-completed operations hazard"; or
   b. Because of "bodily injury" by disease sustained by your "employees" arising out of and in the course of their employment by you.

   The Aggregate Limit applies separately to **a.** and **b.**
3. Subject to limits described in **2.** above the Each Occurrence Limit is the most we will pay for the "ultimate net loss":
   a. In excess of the applicable limits of "underlying insurance"; or
   b. If an "occurrence" is not covered by "underlying insurance", but covered by the terms and conditions of this policy

   because of all "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of any one "occurrence".

   We will not pay more than the Limits of Insurance shown in the Declarations for each "occurrence" because any Personal Umbrella Liability Endorsement(s) is attached to and forms a part of this policy.
4. Subject to limits described in **2.** and **3.** above and to the terms and conditions of the "underlying insurance":
   a. If the limits of "underlying insurance" have been reduced by payment of claims, this policy will continue in force as excess of the reduced "underlying insurance"; or
   b. If the limits of "underlying insurance" have been exhausted by payment of claims, this policy will continue in force as "underlying insurance".
5. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV - CONDITIONS**

1. **Appeals**

   If the insured or any insurer who provides the applicable "underlying insurance" elects not to appeal a judgment which exceeds the "underlying limit", we may elect to do so at our own expense. We shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall this provision increase our liability beyond our applicable limits of liability for all "ultimate net loss" plus the expense of such appeal.
2. **Audit**

   We may audit and examine your books and records as they relate to this insurance at any time during the policy period and up to three years afterwards.
3. **Bankruptcy**

   Bankruptcy or insolvency of the insured or the insured's estate shall not relieve us of any obligations under this policy.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

(5) An "executive officer" or insurance manager if you are an organization other than a partnership, joint venture or limited liability company.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**7. First Named Insured**

The person or organization first named in Item 1 of the Declarations will act on behalf of all other insureds where indicated in this policy.

**8. Inspections and Surveys**

We have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give you reports on the conditions we find; and

c. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**9. Legal Action Against Us and Loss Payments**

a. No legal action may be brought against us unless there has been full compliance with all the terms of this policy nor until the amount of the insured's obligation to pay has been finally determined as provided below. No person or organization has any right under this policy to bring us into any action to determine the liability of the insured.

b. We shall be liable for payment of the "ultimate net loss" for any "occurrence" to which this policy applies:

(1) For "occurrences" not covered by "underlying insurance"; or

(2) In excess of the "underlying limit" applicable to the "occurrence" only after the insurers who provide the applicable "underlying insurance" have paid or become obligated to pay the amount of the "underlying limit" applicable to the "occurrence".

Our payment will be made following final determination of the amount of the insured's obligation to pay either by final judgment against the insured or by written agreement with the insured, the claimant, the underlying insurers and us.

**10. Maintenance of Underlying Insurance**

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**SECTION V - DEFINITIONS**

1. "Advertising Injury" means injury arising out of one or more of the following offenses committed in the course of advertising your goods, products or services:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

   Advertising means an advertisement, publicity article, broadcast or telecast.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. "Auto" also means self-propelled vehicles with the following types of permanently attached equipment:

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

   "Auto" does not include "mobile equipment".

3. "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

4. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

5. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any similar governing document.

6. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

7. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

12. "Property damage" means:

a. Physical injury to or destruction of tangible property including all resulting loss of use. All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

13. "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such money damages are claimed and to which you must submit or do submit with our consent;

b. Any other alternative dispute resolution proceeding in which such money damages are claimed and to which you submit with our consent; or

c. An appeal of a civil proceeding.

14. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

15. "Ultimate net loss" means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise. "Ultimate net loss" does not include Defense and Supplementary Payments as described in SECTION I.C. of this policy.

16. "Underlying insurance" means the policies of insurance listed in the Schedule of Underlying Policies and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this policy covers.

17. "Underlying limit" means the total of the applicable limits of all "underlying insurance" less the amount, if any, by which the applicable limit of the applicable policy listed in the Schedule of Underlying Policies has been reduced solely by payment of loss for an "occurrence" during the policy period.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

1. This insurance does not apply:

   **A.** To any liability:

   (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** To any liability resulting from the "hazardous properties" of "nuclear material", if

   (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(b)** has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   (3) The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this exclusion:

   **A.** "Hazardous properties" include radioactive, toxic or explosive properties;

   **B.** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

   **C.** "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   **D.** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

   **E.** "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

   **F.** "Nuclear facility" means:

   (1) Any "nuclear reactor";

   (2) Any equipment or device designed or used for **(a)** separating the isotopes of uranium or plutonium, **(b)** processing or utilizing "spent fuel", or **(c)** handling, processing or packaging "waste";

   (3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   (4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   **G.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

   **H.** "Property damage" includes all forms of radioactive contamination of property.

Copyright ©1994 The Cincinnati Insurance Company,
The Cincinnati Casualty Company and
The Cincinnati Indemnity Company and
contains copyrighted material of Insurance
Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1992

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WEST VIRGINIA CHANGES - CANCELLATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**
**EXCESS LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY - CLAIMS MADE**

The provision in the Cancellation Condition which indicates that proof of mailing will be sufficient proof of notice is deleted.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTORS LIMITATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY
PROFESSIONAL UMBRELLA LIABILITY POLICY
PROFESSIONAL UMBRELLA LIABILITY POLICY - CLAIMS MADE

**Exclusions (Section I.B.)** is modified to add the following:

1. This policy does not apply to:

   a. Any liability arising out of any project insured under a wrap-up or similar rating plan.

   b. (1) Any liability arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

      (a) Providing engineering, architectural or surveying services to others; and

      (b) Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

   (2) Subject to Paragraph (3) below, professional services include:

      (a) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

      (b) Supervisory or inspection activities performed as part of any related architectural or engineering activities.

   (3) To the extent coverage is provided by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Policies, and then only for such hazards for which coverage is afforded by such "underlying insurance", professional services shall not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with construction work you perform.

   c. "Property damage" to:

      (1) Leased, rented, or borrowed equipment; or

      (2) Property being transported, installed, erected, or worked upon by the insured or any contractors or subcontractors working directly or indirectly on your behalf.

2. The following exclusions apply unless insurance is provided to the insured by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Policies, but only to the extent insurance is provided at the limits specified by such "underlying insurance" and subject to all its limitations and exclusions:

   This policy does not apply to:

   a. "Property damage" arising out of (1) blasting or explosion other than the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment or, (2) the collapse of or structural injury to any building or structure due to (i) grading of land, excavating, burrowing, filling or backfilling, tunneling, pile driving, cofferdam work or caisson work, or (ii) moving, shoring, underpinning, raising, or demolition of any building or structure or removal or rebuilding of any structural support thereof.

   b. "Property damage" to wires, conduit, pipes, mains, sewers, tanks, tunnels or other similar property, or any apparatus in connection therewith, below the surface of the ground, if such "property damage" is caused by and occurs during the use of mechanical equipment for the purpose of grading of land, paving, excavating, drilling, burrowing, filling, backfilling, or pile driving.

   c. Any liability assumed under any contract.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLLUTANT EXCLUSION

This endorsement modifies insurance provided under the following

COMMERCIAL UMBRELLA LIABILITY POLICY
PROFESSIONAL UMBRELLA LIABILITY POLICY
PROFESSIONAL UMBRELLA LIABILITY POLICY - CLAIMS-MADE

**Section I - Coverages, B. Exclusions** is modified as follows:

Exclusion **13.** is deleted and replaced by the following:

This policy does not apply to:

**13. Pollutant**

**a.** Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, emission, migration, release or escape of pollutants:

(1) That are, or that are contained in any property that is:

(a) Being transported or towed by, handled, or handled for movement into, onto or from the "auto";

(b) Otherwise in the course of transit by or on behalf of the insured; or

(c) Being stored, disposed of, treated or processed in or upon the "auto".

(2) Before the pollutants or any property in which the pollutants are contained are moved from the place where they are accepted by the insured for movement into or onto the "auto"; or

(3) After the pollutants or any property in which the pollutants are contained are moved from the "auto" to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph (1) above does not apply to fuels, lubricants, fluids, exhaust gases or other similar pollutants that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the "auto" or its parts, if the pollutants escape, seep, migrate, or are discharged, dispersed, released or emitted directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such pollutants.

Paragraphs (2) and (3) above do not apply to an "occurrence" that occurs away from premises owned by or rented to an insured with respect to pollutants not in or upon an "auto" if:

(a) The pollutants or any property in which the pollutants are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto"; and

(b) The discharge, dispersal, seepage, emission, migration, release or escape of the pollutants is caused directly by such upset, overturn or damage.

**b.** Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, emission, migration, release or escape of pollutants:

(1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(2) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(4) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CARE, CUSTODY, OR CONTROL EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY**
**PROFESSIONAL UMBRELLA LIABILITY POLICY - CLAIMS MADE**

Exclusions (SECTION I.B.) is modified to add the following:

This policy does not apply to "property damage" to property of others in the care, custody or control of an insured.

# PREMIUM PAYMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY
CLAIMS MADE EXCESS LIABILITY POLICY
EXCESS LIABILITY POLICY
PROFESSIONAL UMBRELLA LIABILITY POLICY
PROFESSIONAL UMBRELLA LIABILITY POLICY - CLAIMS MADE

It is agreed that the premium shall be paid as follows:

| Premium | Short Term | Annual |
|---|---|---|
| COMMERCIAL UMB. | | 2,650 |
| WV 1% SURCHARGE | | 27 |
| | | |
| | | |
| | | |
| Installment Charge | | 20 |
| Annual Total | | 2,697 |

| | First Installment | Remaining Installment(s) |
|---|---|---|
| ☐ Semi-Annual | | |
| ☒ Quarterly | 674 | 674 |

PREMIUM INCLUDES WV 1% SURCHARGE & QUARTERLY.

All other terms and conditions of this policy remain unchanged.

PATTERSON BELL AND CRANE COMPANY
1012 KANAWHA BOULEVARD EAST
P O BOX 2551
CHARLESTON WV 25329

47019

Dear Agent:

Our Commercial Lines Team has taken considerable care to process this policy correctly. We think you will be pleased with its neatness and accuracy. HOWEVER, IF THE POLICY HAS NOT BEEN PRODUCED TO YOUR SATISFACTION PLEASE INDICATE THE PROBLEMS AND RETURN IT DIRECTLY TO MY ATTENTION VIA FAX (513) 870-2960. I will see that the corrected policy is processed on a priority basis.

Thank you for placing this coverage with The Cincinnati Insurance Companies!

Best Regards,

Thomas A. Joseph
Senior Vice President
Commercial Lines

Policy Number: CCC 445 08 24

Effective Date: 12-01-1999

Named Insured: HEMINGWAY PLACE LLC

Underwriter SEAN HOLLOWAY

Rater

Typist KEARY MOSS

| PREMIUM | COMMISSION |
|---|---|
| 2,670 ANNUAL/INST. PREM. | 15% |
| 27 ANNUAL | 0% WV SURCHARGE |